**Olive OVERMAN, Appellant,**

v.

**Grace Edna BAKER, Appellee.**

**No. 12–99–00362–CV.**

Court of Appeals of Texas, Tyler.

June 28, 2000.

Richard W. White, Henderson, for Ad Litem.

John F. Berry, Tyler, for Appellant.

J.R. Phenix, Henderson, for Appellee.

Panel consists of RAMEY, C.J., HADDEN, J., and WORTHEN, J.

ROBY HADDEN, Justice.

This is an appeal of a judgment which imposed Rule 13[1] sanctions upon the applicant in a temporary guardianship proceeding. Because we hold that the trial court abused its discretion in imposing sanctions, we will reverse and render.

On January 29, 1999, Olive Overman ("Overman"), filed an application to be appointed temporary guardian of the person and estate of her 93 year old aunt, Grace Edna Baker ("Baker"). In her application, Overman alleged that Baker was incapacitated, that she suffered from dementia or senility, and was making decisions regarding her residence, care, and use of her funds to her detriment. She alleged that without a temporary guardian, Baker would face immediate danger that her physical well being would be impaired and her estate wasted.

In accordance with the mandate in Section 646(a) of the Texas Probate Code, the trial court immediately appointed Richard W. White ("White") as Baker's attorney ad litem who filed an answer on behalf of Baker. In addition, Baker filed an original answer through her private attorney, J.R. Phenix ("Phenix"). In her answers and subsequent motions filed through White and Phenix, Baker requested security and costs including attorney ad litem fees, contested the application as being groundless, requested that the application be dismissed, and that sanctions be imposed on Overman for initiating the proceeding. In her Motion to Dismiss and for Sanctions filed April 29, 1999, Baker alleged that Overman was disqualified because Baker, in accordance with Section 679 of the Probate Code, had expressly designated Louise Broussard ("Broussard"), to serve as guardian of her person and estate and had also disqualified Overman. Baker attached to her motion her Declaration Of Guardian In The Event Of Later Incapacity Or Need Of Guardian, which was executed by Baker on December 28, 1998, and which designated Broussard as her guardian and disqualified Overman. Because of Baker's declaration of guardianship, Overman, on May 7, 1999, filed her motion seeking to withdraw her application. However, Baker pursued her motion for sanctions. After a hearing, the trial court granted Overman's motion to withdraw and dismiss her application but entered judgment that Baker recover from Overman, as sanctions, her personal attorney's fees of $2,300.00 and the attorney ad litem fee of $2,651.71 which had been taxed as costs.

On appeal, Overman brings three points of error asserting: 1) that the trial court abused its discretion in awarding Rule 13 sanctions against Overman, 2) that the trial court erred in awarding ad litem fees after Baker obtained her own attorney, and 3) that the trial court erred in award-

---

1. All references to Rule 13 refer to the Texas Rules of Civil Procedure Rule 13.

ing the attorney's ad litem fees as costs of court against Overman, the applicant.

### SANCTIONS UNDER RULE 13

■ We review a trial court's Rule 13 sanctions order under an abuse of discretion standard. *Tarrant County v. Chancey,* 942 S.W.2d 151, 154 (Tex.App.—Fort Worth 1997, no pet.); *see also GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730–32 (Tex.1993) (original proceeding in which abuse of discretion standard for review of Rule 13 sanctions was applied). To determine whether the trial court abused its discretion we examine whether it acted without reference to any guiding rules or principles. *Stites v. Gillum,* 872 S.W.2d 786, 788 (Tex.App.—Fort Worth 1994, writ denied). We should, however, only overturn a trial court's discretionary ruling when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Stites,* 872 S.W.2d at 788.

Rule 13 of the Texas Rules of Civil Procedure provides, in pertinent part, as follows:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.

. . .

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. 'Groundless' for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. . . .

TEX.R.CIV.P. 13.

■ Rule 13 is designed to check abuses in the pleading process, *i.e.* to en-

sure that at the time the challenged pleading was filed, the litigant's position was factually well grounded and legally tenable. *Home Owners Funding Corp. v. Scheppler,* 815 S.W.2d 884, 889 (Tex. App.—Corpus Christi 1991, no writ). A court may impose sanctions against a party if it files a pleading that is groundless *and* either brought in bad faith or for the purpose of harassment. *McCain v. NME Hospitals, Inc.,* 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ). Rule 13 dictates that courts shall presume that pleadings are filed in good faith, and therefore, the party moving for sanctions bears the burden of overcoming this presumption. *GTE,* 856 S.W.2d at 731. The rule does not apply to the pursuit of an action which is later determined to be groundless after pleadings were filed. *Karagounis v. Property Company of America,* 970 S.W.2d 761, 764 (Tex.App.—Amarillo 1998, pet. denied). In deciding whether a pleading meets the two pronged test of being both groundless and either brought in bad faith or for the purpose of harassment, a trial court must examine the facts and circumstances existing at the time the pleading was filed. *Tarrant County,* 942 S.W.2d at 155; *Home Owners Funding Corp. of America,* 815 S.W.2d at 889.

The purpose of a temporary guardianship of an incapacitated person is to promote and protect the well-being of the person. TEX. PROB.CODE ANN. § 602 (Vernon Supp.2000); *see also Valdes–Fuerte v. State,* 892 S.W.2d 103, 107 (Tex.App.—San Antonio 1994, no pet.). The Probate Code further provides that "if a court is presented with substantial evidence that a person may be ... a[n] incapacitated person, and the court has probable cause to believe that the person or person's estate, or both, requires the immediate appointment of a guardian, the court shall appoint a temporary guardian...." TEX. PROB.CODE ANN. § 875(a) (Vernon Supp.2000).

■ We will now examine the facts and circumstances existing at the time Over-

man prepared and filed her application to be appointed temporary guardian over Baker. For over twenty five years Overman took care of Baker who was her aunt and who lived alone. Overman gave Baker the land next door to her dwelling to build a house and live there. During this time she took her to the doctor, the hospital, grocery shopping, to the bank, on vacation and helped take care of her. Overman and Baker were apparently very close and Overman knew Baker well. Baker's physician, Dr. Sanford Ladage ("Ladage"), testified that Overman seemed to always act with Baker's best interest in mind. In recent years, as Baker became older and could not drive, it was necessary for Overman to give her more attention and care and during these recent years required a minimum of a bi-monthly visit to her doctor and periodic hospitalizations. Overman, or someone at Overman's request, brought Baker her mail so that she would not fall while going out to her mailbox and back.

Overman began to notice changes in the personality of Baker in the last half of 1998. She testified that Baker was not as mentally alert as in prior years. She seemed to be very distant and began forgetting things. Baker accused Overman of bugging her residence, of trying to kill or hurt her and of being a thief and liar. At the same time, Baker would accept favors from Overman, such as buying groceries and running errands. They were together as a family on Christmas Day, which was Baker's birthday, in Overman's home in December 1998. Overman discussed Baker's inconsistency and actions with other family members who confirmed that they noticed such changes as well. Baker began to not recognize family members in family photos.

It appears that during 1998, Baker became acquainted with a friend, Louise Broussard, and began to rely upon her for counsel and advice to the exclusion of Overman. Baker began lying to Overman and covering up her plans, especially visits by Broussard. Overman discovered that Baker had made statements to others that she was going to leave her residence and move to a location closer to Broussard. Baker also made significant changes to her banking arrangements, removed Overman from her bank account and appointed Broussard as a signatory of and ultimate beneficiary under her account. Furthermore, Baker instructed her postal carrier to no longer deliver mail to her residence but instead deliver it to Broussard, who lived several miles away. Baker withheld from Overman these changes in her habits and did not tell Overman of the mail delivery change. Their relationship began to deteriorate.

Overman argues that these statements, along with Baker's changes of habits, her withholding of these changes from Overman, Broussard's involvement in the changes of Baker's behavior and lifestyle, and the persuasion and control by Broussard over Baker justified filing the application for temporary guardianship. Overman asserts that she was justified in fearing that Baker was being strongly influenced by Broussard, that this influence would lead to bad decisions in her living and financial arrangements which would have a disastrous effect on Baker. Baker's physician, Ladage, agreed with Overman that Baker had been making some bad decisions.

In her testimony, Baker agreed that she had built a home on property adjacent to her niece, Overman, and that Overman had helped take care of her for twenty five years. However, she testified that she began to experience problems with Overman in 1998 when she was ninety two years of age. Baker testified that Overman began to dictate things to her and tell her what to do. Baker also testified that Overman transferred $8,000.00 from Baker's account into her own account. Although the purpose of the transfer was disputed, it was eventually transferred back to Baker so that it was solely in her own name. Through her Sunday School

she had met a friend, Broussard. Baker testified that Overman began to resent her relationship with Broussard and testified to several conversations and a confrontation in Baker's home which Baker observed as demonstrating Overman's hostility toward Broussard and their friendship. Baker testified to other conduct on the part of Overman which she interpreted as Overman's efforts to gain control of her, all of which caused their relationship to deteriorate. Baker presented evidence which she believed showed that she was a competent person. However, the burden on Baker was to show that there was *no* basis in law or fact for filing the application.

In assessing sanctions, the trial court acted under an erroneous assessment of the law and the evidence. From the record before us, Baker did not succeed in establishing that there was no arguable basis for Overman's cause of action as Rule 13 requires. The record speaks to the contrary. Overman had taken care of Baker for many years and had established a close relationship as Baker's primary care giver. Baker was 93 years old when Overman filed the application. Changes in Baker's behavior regarding finances, mail delivery, living conditions and friendships, as described in the record would reasonably alarm the care giver, especially if communication between the two deteriorated. Although there was evidence that Baker enjoyed a certain competence for her age, there was substantial evidence that she was becoming incapacitated. Thus, we conclude that Baker has failed to establish that there is no basis in law or fact for Overman's pleadings and has, therefore, failed to meet her burden under Rule 13.

Baker asserts that Overman did not present a physician's certificate of incapacity with the application as required by Section 687 and without such evidence, the application is groundless. We do not agree. The Texas Probate Code contains a separate section covering the appointment and procedure to be followed in temporary guardianships. TEX. PROB.CODE ANN. § 875 (Vernon Supp.2000). The requirements for the filing of an application for appointment of a temporary guardian as found in this section of the Probate Code do not expressly require a physician's certificate but simply require that a court be presented with substantial evidence that a person *may* be an incapacitated person. Furthermore, Section 875(b) provides that a person for whom a temporary guardian has been appointed may not be presumed to be incapacitated. TEX. PROB.CODE ANN. § 875(b) (Vernon Supp.2000). We conclude, therefore, that it was not necessary that Overman file a physician's certificate of incapacity with her application. In as much as Baker has failed to meet the first prong that the application was groundless, it will not be necessary for us to address the second prong of bad faith or harassment.

■■■■ It is also required by Rule 13 that the trial court must state with particularity the good cause for finding that pleadings upon which sanctions are based are groundless and frivolous and brought for purposes of harassment. *Gorman v. Gorman,* 966 S.W.2d 858, 867–68 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). In other words, the court is required to properly predicate its award of sanctions against Overman under Rule 13 by stating the specific acts or omissions on which the sanctions are based. *Jimenez v. Transwestern Property Co,* 999 S.W.2d 125, 130 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Alexander v. Alexander,* 956 S.W.2d 712, 714 (Tex.App.—Houston [14th Dist.] 1997, pet. denied). The failure to state the particulars of good cause amounts to noncompliance with the sanction rule and, therefore, is an abuse of discretion rendering the order unenforceable. *Thomas v. Thomas,* 917 S.W.2d 425, 432 (Tex.App.—Waco 1996, no writ).

■■■■ In the instant case, the trial court simply stated that the "application filed herein by Olive Overman was

groundless," that "the application ... was brought in bad faith and for the purpose of harassment," that "good cause exists for the imposition of sanctions against Olive Overman ...," that the application "was brought for an improper purpose and caused needless increase in the costs of litigation" and that the allegations had no evidentiary support nor would likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Such general findings are insufficient to satisfy the particularity requirements of Rule 13. *Tarrant County*, 942 S.W.2d at 155. The court must specify in its order the particular acts or omissions on which the sanctions are based. Accordingly, we also conclude that Baker has failed to meet the Rule 13 requirement regarding the particulars of good cause. We hold that the trial court abused its discretion by imposing sanctions against Overman under Rule 13. Overman's first issue is sustained.

## AD LITEM FEES

In issue number two, Overman asserts that the trial court erroneously awarded the ad litem attorney's fees after the proposed ward obtained her own attorney. It appears to be a reasonable argument that Baker did not need the services of an attorney ad litem after she retained her private attorney. However, there is no evidence in the record to support the conclusion that the attorney's fees assessed for the attorney ad litem were for services beyond the date Baker retained her private attorney. Furthermore, if the fees awarded included such later services, there is nothing in the record which would enable the trial court or this Court to determine what percentage of the fee was incurred after Baker retained her private attorney. The record does show that White was Baker's court appointed attorney for 10 days and that during this time he spent considerable time counseling with Baker, filed two motions, and obtained one order from the court. Overman's second issue is overruled.

## ASSESSMENT OF COSTS

In her issue number three, Overman asserts that the trial court erroneously awarded the ad litem attorney's fees as costs and then assessed the costs against Overman. Overman argues that there were two options available to the court for assessment of the attorney ad litem fees; either the fees are assessed against the proposed ward's estate or the county in the case of insolvency. Overman argues that the trial court circumvented the clear provisions of the Texas Probate Code in assessing the fees as costs and in ordering that costs be paid by Overman.

Section 646(a) of the Probate Code provides that in a proceeding for the appointment of a guardian, the court shall appoint an attorney ad litem to represent the interests of the proposed ward. TEX. PROB. CODE ANN. § 646(a) (Vernon Supp.2000). It further provides that the attorney ad litem shall interview the proposed ward, discuss with the proposed ward the law and facts of the case, the proposed ward's legal options regarding the disposition of the case and the grounds on which guardianship is sought. TEX. PROB.CODE ANN. § 647 (Vernon Supp.2000). The Code further provides that the court shall order the payment of a fee set by the court as compensation to the attorney ad litem to be taxed as costs. TEX. PROB.CODE ANN. § 665A (Vernon Supp.2000). Thus, it appears that the trial court was correct in appointing White and assessing White's fee as costs of the proceeding.

Further, Section 669 of the Probate Code provides that "in a guardianship matter, the costs of the proceeding, ... shall be paid out of the guardianship estate or if the estate is insufficient to pay for the cost of the proceeding, the cost of the proceeding shall be paid out of the county treasurer and the judgment of the court shall be issued accordingly." TEX. PROB.CODE ANN. § 669 (Vernon Supp.2000). It is not clear whether Section 669 is intended to apply to

a temporary guardianship application which has been successfully contested as in the instant case, but from the reading of Section 665A of the Code, the clear implication is that the attorney ad litem's fee which is assessed as costs is to be paid out of the proposed ward's assets unless the court determines that the proposed ward is unable to pay for such services in which case the county is to be responsible for such costs.

Thus, we conclude that under the construction of the Probate Code cited above the court was correct in assessing the attorney ad litem fees as costs in the case, but was in error in ordering such costs be paid by Overman. The costs are to be paid by the proposed ward and if the ward is unable to pay only then is the county responsible. *See E. Simmons v. Harris County,* 917 S.W.2d 376, 378 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (dicta). Overman's third issue is sustained.

## CONCLUSION

Accordingly, the judgment of the trial court dated August 5, 1999, granting Overman's motion to withdraw her application for appointment of temporary guardian of the person and estate of Baker and dismissing said application for appointment of temporary guardian is affirmed. In all other respects the judgment of the trial court is reversed and rendered that Baker and White take nothing as against Overman and that the attorney ad litem fee in favor of White be assessed against Baker.