

NUMBER 13-09-00705-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### IN THE GUARDIANSHIP OF
### MELISSA K. MARBURGER, AN INCAPACITATED PERSON

**On appeal from the Probate Court
of Hidalgo County, Texas.**

# O P I N I O N

### Before Justices Yañez, Garza, and Benavides
### Opinion by Justice Benavides

Appellant, Michael J. Seidelhuber, as guardian of the person of Melissa Marburger, appeals the trial court's: (1) refusal to rule on his motion to permit him to resign as guardian; (2) appointment of appellee, Janet McCullar Vavra, as attorney ad litem; and (3) compelling Michael and the ward's mother to pay Vavra's attorney fees and expenses. We reverse and remand.

## I. BACKGROUND

Melissa Marburger is an adult incapacitated woman. Her mother is Wanda Kelly Marburger Seidelhuber ("Kelly"). Her biological father is Eddie Marburger, Jr. ("Eddie"). Her stepfather is appellant, Michael J. Seidelhuber ("Michael").

In 2006, Michael was appointed as the guardian of Melissa's person. No guardian of the estate of Melissa has ever been appointed. In May 2007, Michael and Kelly filed suit in the 398th District Court of Hidalgo County against Eddie seeking an increase in monthly support payments for Melissa.[1] Thereafter, in June 2008, Michael and Kelly filed for divorce.[2] On December 5, 2008, Michael filed a motion seeking to resign as Melissa's guardian. He alleged:

> Guardian would show unto the Court that he is unable to carry out his duties as guardian of the person of Melissa K. Marburger[,] and it would be in her best interest if her mother, Kelly Marburger Seidelhuber[,] were appointed as successor guardian.

> Guardian would show unto the Court that[,] at the time he was appointed as Guardian[,] he and Melissa's mother, Kelly, in effect, shared in the care, supervision and watchfulness of Melissa; however, a divorce action has been filed and is pending . . . in which allegations have been made, issues formed, and orders entered by the Court which make it impossible and impractical for Mr. and Mrs. Seidelhuber to be in close proximity [to] one another, or to share the care of Melissa as they did before becoming estranged, and it would be to the best interest of Melissa if her mother were appointed as guardian of her person.

> Guardian resides in Marble Falls, Texas and now travels extensively in his profession as a metal fabrication consultant and cannot be in the close contact with the ward that is required because of her mental condition and needs.

Michael attached a sworn report showing Melissa's condition. *See* TEX. PROB. CODE

---

[1] *In the Interest of Melissa K. Marburger*, No. F-3259-07-I, in the 398th District Court of Hidalgo County, Texas (the "support" suit).

[2] *In the Matter of the Marriage of Michael Seidelhuber and Kelly Seidelhuber*, No. 2008-06-3241-D, in the 103rd District Court of Cameron County, Texas (the "divorce proceeding").

ANN. § 760(a) (Vernon Supp. 2010).

On December 10, 2008, Kelly filed an objection to Michael's resignation as guardian. She alleged:

> There is currently a cause of action pending in the 398th District Court filed by the Guardian on behalf of the ward. Said suit [is] for the recovery of child support from the biological father of the ward. Said case [has] been pending since May 27, 2007. Substantial resources of both the Guardian, the ward and her mother have been spent for the prosecution of this matter. It would be a great financial burden on the ward and her mother, Kelly Seidelhuber[,] to allow the Guardian and the attorney that has been retained to withdraw and have to hire another attorney at this late juncture of the lawsuit. It also appears that the Guardian is close to resolving this matter on behalf of the ward. For these reasons, the Respondent objects to the resignation of Michael Seidelhuber as the guardian of Melissa K. Marburger.

The trial court held a hearing on Michael's motion to resign on February 11, 2009. Michael's attorney appeared, as did Kelly's attorney, but Michael was not present. Kelly objected to the hearing based on Michael's absence. Kelly argued that Michael had retained an attorney to prosecute the support suit against Eddie and that the attorney had asked to withdraw if Michael was no longer Melissa's guardian. Kelly further argued that, in the divorce proceeding, Michael had been ordered to pay for Melissa's caretaker out of the community estate, and Michael was seeking to resign as Melissa's guardian to escape liability for her support in the divorce proceeding. Kelly testified at the hearing, stating that she feared that Michael would withdraw as guardian and drop the support suit against Eddie, leaving Melissa with no means of support. Kelly stated that she would accept an appointment as Melissa's guardian, but not until it would not "sabotage" the support suit against Eddie. The trial court took the matter under advisement, noting its belief that "the strongest way to prevent the dismissal or nonsuit [of the support suit against Eddie] is to have a successor appointed."

3

On February 26, 2009, the trial court, sua sponte, issued its own "Motion to Consider Whether to Appoint a Guardian Ad Litem (Pursuant to Section 645 of the Texas Probate Code)." The "motion" stated that the court "may appoint a guardian ad litem to represent the interests of an incapacitated person in a guardianship proceeding," and by separate order, the court set a hearing for March 11, 2009. Kelly filed a response stating she would be out of town that day, and apparently, the hearing was passed.

On May 14, 2009, the trial court issued an order appointing Vavra, an attorney from Austin, Texas, as attorney ad litem for Melissa, apparently without prior notice to Michael or Kelly. The order stated that it was made pursuant to section 34A of the Texas Probate Code and required Vavra to look into the following matters:

1.  Review the Motion to Resign filed in this matter and formulate a strategy as to whether it should be contested by the incapacitated ward.

2.  Review the status of the pending Motion for Child Support and formulate a strategy as to whether specific performance should be pursued on the pending child support. Further, can this guardianship be transferred to the 398th District Court where the suit affecting the Parent Child Relationship is currently pending (Cause No. F-3259-07-I, In the Interest of Melissa Marburger, an Adult Disabled Child.)

3.  Review the pending divorce proceedings in Cameron County and formulate a strategy as to whether the ward should intervene in that divorce proceeding. (Cause No. 2008-06-3241-H, In the Matter of the Marriage of Michael Seidelhuber and Kelly Seidelhuber).

The order provided that Vavra would be paid $200 per hour for her services and ordered both Michael and Kelly to pay Vavra $500 each as security for costs by May 24, 2009.

The next day, Michael filed a "Motion for Hearing and Appointment of Attorney Ad

Litem."[3]  Michael asked the court to set a date for a hearing on his motion to resign as guardian and asked the court to discharge him and to appoint a successor guardian. Michael also asked the court to determine its own motion to consider whether or not to appoint an ad litem and "point[ed] out that [Michael's attorney and Kelly's attorney] have both stated they have no objection to such appointment should the Court believe same is necessary."

On June 19, 2009, Vavra filed a "Motion for Security of Costs."  She argued that as of June 10, 2009, her billing rate was $400 per hour, and she requested that an initial retainer deposit of $25,000 be paid to her within ten days.  On June 22, 2009, Michael filed a "Motion for Reconsideration of Appointment of Attorney Ad Litem and Opposition to Request for Initial Retainer of $25,000."  Michael argued that he had been ordered, in the divorce proceeding, to surrender possession of the marital residence in South Padre Island, Texas and had been forced to move to Marble Falls, Texas, preventing him from having the necessary contact with Melissa.  Additionally, he asserted that "evidence in the divorce case has developed a controversy over ownership of an account in Frost Bank in the name of Mrs. Seidelhuber, in an amount of approximately Two Million Dollars," and that Kelly claimed that some or all of it belongs to Melissa.  Thus, Michael argued that he was asserting a claim adverse to Melissa and was disqualified as a matter of law from serving as her guardian.  Furthermore, Michael requested that the order appointing Vavra be withdrawn and that a corporate guardian be considered before continuing Vavra's appointment at "an apparent cost estimated in excess of $25,000.00 with a cost of $400 an hour, or between $2000 and $4000 dollars just for travel from

---

[3] Michael argues that this title was a misnomer because, as the body of the motion indicates, he was requesting appointment of a guardian ad litem.

5

Austin, Texas to Edinburg, for appearance for hearings."

The trial court set Vavra's motion for costs and Michael's motion in opposition for a hearing on July 22, 2009. Vavra testified that she has been practicing family law in Austin for twenty years, is board certified in family law, and that her hourly rate is $400 per hour. She testified that she had spent a large amount of time—$5,300 worth—getting up to speed on the issues she was told to investigate. Vavra testified about the complexity of the case and the work that still needed to be done, which she claimed precluded her from other employment. Vavra testified that her retainer should either be split between Michael and Kelly or come from their community estate. She stated that she believed it would be "inevitable in this case that Mr. Seidelhuber will be removed and a new guardian will be appointed on behalf of this ward," but she opined that the court should not allow Michael to resign at that particular time because Melissa would be left without a guardian.

After Vavra's testimony, Michael's attorney stated that he was not going to object to her appointment as attorney ad litem because "we don't know who's going to pay for it. She may recommend a corporate guardian before we're through. I don't know what she's going to do." The court then asked Vavra, "So you're asking for 25,000 as security for your costs, that would include—you've already expended $5,300, and so the nuts and bolts of that, if I understand your testimony, is that I would order each of the respective parties to deposit $12,500 into the registry of the Court?" Vavra said, "Yes, Your Honor." Vavra then clarified that she wanted the money sent directly to her.

Kelly's attorney then argued to the court that Kelly did not have the resources to pay this kind of an ad litem fee and stated that "there are other competent attorneys, if the Court feels inclined, that might be local and would work on this case as diligently as this

6

attorney for $200 an hour, and that would be something more reasonable." Kelly's attorney then stated that Kelly was "willing to let Mr. Seidelhuber be removed as [guardian], and then she be appointed." In summary, Kelly's attorney argued:

> So for that reason, Your Honor, we would request that either my client be appointed guardian and Mr. Seidelhuber, you know—because in realistic terms he is not the biological father, and Mr. Marburger needs to come up to the plate, and she needs to continue doing what she's been doing for this ward. Or if the Court feels that an ad litem is necessary, that it be somebody else that can work at more reasonable rates.

The trial court indicated that it intended to appoint Vavra as attorney ad litem and give her the retainer and hourly rate she requested. The trial court requested the parties to submit an order stating as much. No order was immediately signed.

On August 6, 2009, Michael filed a motion for rehearing, arguing that at the July 22 hearing, the trial court effectively denied Michael's motion to resign as guardian, even though Kelly withdrew her objection to his withdrawal. Michael further alleged that Vavra

> was not when she accepted the Court's appointment, and did not disclose to the Court then, or during her testimony in the hearing on July 22nd, 2009, that she was not properly certified as required by Probate Code section [647A], nor did the Court inquire as to whether or not she was properly certified.

Accordingly, Michael asked the trial court to reconsider and set aside the order appointing Vavra as attorney ad litem and requiring payment to her. The trial court set a hearing on Michael's motion.

On October 21, 2009, the parties appeared on Michael's motion for rehearing. Michael's attorney stated that he learned after the hearing that Vavra is not certified as required by the probate code. Additionally, Michael argued that, as guardian of the person, he could not be required to pay costs for an attorney ad litem, which must be charged against the ward's estate or against the county. Vavra responded that a

7

certified attorney ad litem is required only for the purpose of establishing whether the ward needs a guardian in an initial guardianship application. She argued that in all other proceedings, section 647A does not apply; rather, the court has authority to appoint an ad litem under section 34A of the probate code, which does not require the attorney to be certified. *Id.* § 34A (Vernon 2003).

On November 5, 2009, the trial court issued an order stating that, after considering Vavra's motion for security for costs and Michael's motion for rehearing, the court was appointing Vavra as attorney ad litem pursuant to section 34A of the Texas Probate Code. The court found that Melissa "has no estate, therefore there is no estate against which to charge these ad litem fees . . . ." The court further found that "[w]ith regard to Sec. 665B of the Texas Probate Code, there are no funds in the county treasury that are budgeted for this purpose (attempted resignation with opposition)." Finally, the court stated that this was not a "guardianship matter, but rather an attempt by a Guardian to resign his fiduciary capacity." Finally, the court ordered Michael and Kelly to each pay a $12,500 retainer directly to Vavra by November 27, 2009 and ordered that her billing rate would be $400 per hour. Michael then filed this appeal.

## II. APPOINTMENT OF NON-CERTIFIED ATTORNEY AD LITEM

By his second issue, Michael argues that the trial court abused its discretion in this guardianship proceeding by appointing an attorney ad litem who was not certified as required by section 647A of the Texas Probate Code. *See id.* § 647A (Vernon Supp. 2010). Vavra responds that her appointment was made pursuant to section 34A of the code, which does not require her to be certified. *See id.* § 34A. We agree with Michael.

8

## A. Standard of Review

We have not located any cases that address whether, in a proceeding to determine a guardian's right to resign, a trial court must appoint a certified attorney ad litem under section 647A of the probate code. The parties agree, however, that an abuse of discretion standard applies. Under an abuse of discretion standard, review of a trial court's determination of the legal principles controlling its ruling is not deferential. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion . . . ." *Id.*

## B. Analysis

Section 647A(a) provides: "A court-appointed attorney *in any guardianship proceeding* must be certified by the State Bar of Texas or a person or other entity designated by the state bar as having successfully completed a course of study in guardianship law and procedure sponsored by the state bar or its designee." TEX. PROB. CODE ANN. § 647A (emphasis added). It is undisputed that Vavra is not certified under this provision.

Vavra argues, however, that section 647A must be read in connection with section 646, which provides:

> (a)   In a proceeding under [Texas Probate Code Chapter XIII] for the appointment of a guardian, the court shall appoint an attorney ad litem to represent the interests of the proposed ward. The attorney shall be supplied with copies of all of the current records in the case and may have access to all of the proposed ward's relevant medical, psychological, and intellectual testing records.

9

(b)     To be eligible for appointment as an attorney ad litem, a person must have the certification required by Section 647A of this code.

. . . .

(e)     The term of appointment of an attorney ad litem appointed under this section expires, without a court order, on the date the court either appoints a guardian or denies the application for appointment of a guardian, unless the court determines that the continued appointment of the attorney ad litem is in the ward's best interest.

*Id.* § 646(a), (b), (e) (Vernon Supp. 2010). Vavra argues that section 646 contemplates an appointment of a certified attorney ad litem only in an initial guardianship proceeding to determine whether the allegedly incapacitated person needs a guardian, and not otherwise. Vavra points to subsection (e), which provides for the automatic expiration of the ad litem's term upon appointment of the guardian. *See id.* § 646(e). Thus, Vavra argues that this is not a "guardianship proceeding" as contemplated by section 647A because her duties were not related to whether a guardianship should be granted, denied, or whether a guardian had acted improperly, and in fact, a guardianship had long been established before she was appointed.

Instead, Vavra points to section 34A, relied upon by the trial court, which provides:

[T]he judge of a probate court may appoint an attorney ad litem to represent the interests of a person having a legal disability, a nonresident, an unborn or unascertained person, or an unknown heir in any probate proceeding. Each attorney ad litem appointed under this section is entitled to reasonable compensation for services in the amount set by the court and to be taxed as costs in the proceeding.

*Id.* § 34A. Under this provision, Vavra argues, a trial court has broad discretion to appoint an attorney ad litem who is not required to be certified under section 647A. *See id.*

We disagree with Vavra's narrow reading of sections 646 and 647A. Vavra argues that although section 647A applies to "any guardianship proceeding," this is not a "guardianship proceeding" because it is not a proceeding to establish a guardianship in the first instance. "Guardianship proceeding" is specifically defined by the probate code as "a matter or proceeding relating to a guardianship *or any other matter addressed by this chapter*." *Id.* § 601(25) (emphasis added). Thus, Vavra's attempt to limit the phrase's definition by reference to section 646, and to the fact that she was called upon to investigate other proceedings besides the initial creation of a guardianship, is belied by the statute's express definition of the term "guardianship proceeding" with reference to "any other matter addressed by this chapter." *See id.* Resignation of a guardian is addressed in section 760, which lies in the same chapter of the Texas Probate Code as section 647A, and thus, the underlying proceeding in this case falls within section 647A by its express terms. *See id.* §§ 647A, 760.

Moreover, the trial court appointed Vavra to determine, primarily, whether Michael should be allowed to resign as guardian, and it asked Vavra to investigate the divorce proceeding and the support suit specifically for that purpose because Kelly argued that Michael's resignation would adversely affect both proceedings. Additionally, Michael asked that Kelly be appointed as successor guardian, and Vavra indicated that she was opposed to Michael withdrawing as guardian because Melissa would be without a guardian. Section 646 expressly applies to proceedings under Chapter XIII "for the appointment of a guardian," and as we noted above, the provision relating to a guardian's resignation, section 760, is within Chapter XIII. *See id.* § 760.

We believe that when a guardian resigns, one of the considerations is necessarily

11

whether the ward will be adequately protected in the absence of a guardian and whether another person should be appointed as a successor guardian, and this was borne out in the trial court's proceedings below. In fact, Vavra expressly stated that she would not recommend that Michael be allowed to resign because Melissa's interests would be unprotected until a successor guardian was appointed. Thus, we hold, as a matter of first impression, that section 646 applies when a guardian attempts to resign under section 760, and it requires the appointment of a certified attorney ad litem under section 647A to ensure that the ward's interests are protected. *Id.* § 646(a), (b).

Accordingly, the trial court erred in determining the law applicable to the proceeding, and thereby abused its discretion by appointing an attorney ad litem who was not certified under section 647A. We sustain Michael's second issue and reverse the trial court's order appointing Vavra as attorney ad litem.

### III. RESIGNATION OF GUARDIAN

By his third issue, Michael argues that the trial court abused its discretion by refusing to allow him to resign when Kelly had withdrawn her opposition and offered to serve as a successor guardian. This issue, however, has not been preserved for our review. Texas Rule of Appellate Procedure 33.1 provides that, as a prerequisite to an appeal, the appellant must show that he made a timely request or objection in the trial court and that the trial court either "(A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a)(2).

The trial court never issued an order denying Michael's motion to resign as guardian; rather, it delayed ruling on the motion and appointed an attorney ad litem to

12

determine the effect of the resignation. Under these circumstances, we cannot say that the trial court has "refused to rule" on Michael's resignation. *See id.* Accordingly, we overrule Michael's third issue.

### IV. ALLOCATION OF AD LITEM FEES TO A GUARDIAN

By his first issue, Michael argues that a guardian of the person cannot be ordered to pay attorney fees incurred by the ward, and in any event, the trial court erred by determining that Melissa had "no estate" that could pay for an attorney ad litem's fees. Michael relies on Texas Probate Code section 665A, which provides:

> The court shall order the payment of a fee set by the court as compensation to the attorneys, mental health professionals, and interpreters appointed under this chapter, as applicable, to be taxed as costs in the case. If after examining the proposed ward's assets the court determines the proposed ward is unable to pay for services provided by an attorney, a mental health professional, or an interpreter appointed under this chapter, as applicable, the county is responsible for the cost of those services.

TEX. PROB. CODE ANN. § 665A (Vernon Supp. 2010). In this case, the trial court expressly determined that Melissa had "no estate against which to charge these ad litem fees . . . ." Thus, Michael argues that the trial court should have ordered the county to pay for the attorney ad litem fees.

Because of our disposition of Michael's second issue, reversing the order appointing Vavra, the award of fees against Michael is necessarily reversed. We pause, however, to point out that the dispute over whether Melissa has "an estate" or any money to pay an attorney ad litem is intertwined with the divorce proceeding, as Kelly apparently claims that Melissa is entitled to part of the community estate. Additionally, we presume that the support suit against Eddie has continued during this appeal, and circumstances may have changed, giving reason for the court to assess any attorney ad litem fees

13

against Melissa's current estate, if any has developed.   Accordingly, we overrule Michael's first issue.

Nevertheless, we note that in the event circumstances have not changed and Melissa still does not have any estate to speak of, we see nothing in the statute relied upon by the trial court that supports its finding that it may assess attorney ad litem fees against Michael.   The trial court cited Texas Probate Code section 665B—as opposed to section 665A quoted above—stating that "[w]ith regard to Sec. 665B of the Texas Probate Code, there are no funds in the county treasury that are budgeted for this purpose (attempted resignation with opposition)."   Section 665B, however, applies to the payment of attorney fees for an attorney representing an "applicant" in proceedings on "an application to be appointed guardian of the proposed ward, an application for the appointment of another suitable person as guardian of the proposed ward, or an application for the creation of the management trust."   *Id.* § 665B(a) (Vernon Supp. 2010).   Section 665B allows for the payment of attorney fees by the county only if the ward's estate is insufficient and if "funds in the county treasury are budgeted for that purpose."   *Id.* § 665B(a)(2).

In this case, Michael is the "applicant," as he is the one seeking to modify the guardianship.   But the instant dispute is not over the payment of Michael's own attorney fees.   Rather, the situation at hand is expressly governed by section 665A, which provides that the county must pay for Melissa's attorney ad litem fees in the event her estate is insufficient to cover those costs.   *See id.* § 665A; *Overman v. Baker*, 26 S.W.3d 506, 513 (Tex. App.–Tyler 2000, no pet.) (holding that trial court erred by assessing ad litem fees against applicant for guardianship of a proposed ward, which should have been

14

taxed against the ward's estate or the county); *see also In re Guardianship of Humphrey*, No. 12-06-00222-CV, 2008 WL 2445503, at *4 (Tex. App.–Tyler June 18, 2008, pet. denied) (mem. op.) (holding that the trial court erred by assessing ad litem fees against mother of proposed ward instead of against the ward's estate or the county).

## V. CONCLUSION

We sustain Michael's second issue and reverse the order appointing Vavra as attorney ad litem for Melissa and requiring Michael to pay ad litem fees and remand to the trial court for further proceedings consistent with this opinion.

                    _____
                    GINA M. BENAVIDES,
                    Justice

Delivered and filed the
30th day of December, 2010.