

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00139-CV

VICKI SAULNIER                                                        APPELLANT

V.

DANITA HAASE, GREG COLLINS,                                          APPELLEES
LOURINDA WILLEY, RICHARD
NYGREN, AND SCOTT BROWN

----------

### FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 16-02430-431

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In three issues, Appellant Vicki Saulnier appeals an order imposing sanctions against her pursuant to rule of civil procedure 13. *See* Tex. R. Civ. P. 13. Because the order plainly fails to comply with rule 13's good cause particularity requirement, we must reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Saratoga is a residential community located in Denton County, adjacent to Lewisville Lake. When Saulnier initiated the underlying litigation in March 2014, Saratoga was governed by a First Amended and Restated Declaration of Covenants, Conditions and Restrictions (CCRs). Among other things, the CCRs contained provisions applicable to the Saratoga Property Owners Association, Inc. (the SPOA), created an Architectural Control Committee (ACC), and permitted the creation and implementation of Design Guidelines. The SPOA, which acted by and through a Board of Directors (the Board), was responsible for applying and enforcing the CCRs, the ACC was responsible for approving proposed construction plans, and the Design Guidelines were intended to be "applicable to all construction activities within" Saratoga.

Saulnier lives in Saratoga and served as an officer on the Board from 2009 through 2012. She was the Board's president when it adopted Design Guidelines in 2012. In March 2014, the Board's members were Appellees Danita Haase, Greg Collins, Lourinda Willey, Richard Nygren, and Scott Brown, all of whom also resided in Saratoga.

Nate Newman and Jennifer Bynum owned the property adjacent to Saulnier's property, and Marilyn League owned the property adjacent to Newman's and Bynum's property. The properties abut Corps of Engineers' property.

In early March 2014, Newman and Bynum requested permission from the Board to construct an eight-foot-high privacy fence between their property and League's property. Newman and Bynum had submitted a similar request in 2012, when Saulnier was the Board's president, but the request was denied. Saulnier objected to Newman's and Bynum's request, but the Board approved it, concluding that several provisions contained in the Design Guidelines (which prohibited privacy fencing over six feet tall and on lots abutting Corps of Engineers' property) conflicted with the CCRs (which permitted privacy fences) and were therefore unenforceable. Newman and Bynum constructed the fence.

Saulnier quickly sued the SPOA, Newman and Bynum, and the members of the Board in their individual capacities for breach of contract.[2] Regarding the Board members, Saulnier alleged that they had breached the CCRs and the Design Guidelines by approving Newman's and Bynum's fence because no plans were submitted to the ACC for approval, the ACC did not approve any plans, the fence was over six feet tall, and the fence was located on property that abutted Corps of Engineers' property.

The Board members answered, filed a counterclaim for breach of the CCRs, filed a motion to dismiss, and moved for sanctions. After amending their answers several times, and reasserting their motions to dismiss and for sanctions, the Board members filed a motion for summary judgment, arguing that

[2]The trial court granted Saulnier an ex parte temporary restraining order regarding the fence's construction but later declined to grant a temporary injunction.

3

they were not liable in their individual capacities for an action that they had taken in their official capacities as members of the Board—approving the Newman and Bynum fence request. The Board members referenced business organizations code section 22.221(b)[3] and property code section 202.004(a).[4]

In addition to responding to the motion for summary judgment, Saulnier filed a second-amended petition in which she added claims against the Board members for (1) violating property code section 202.004(a), (2) violating business organizations code section 22.221(a)–(b), and (3) a declaration that she had not breached the CCRs. Saulnier also added a section to her petition entitled, "The Board's Desire and Motivation to Harm Plaintiff," which set out a nineteen-point "laundry list" of allegations against the Board that largely had nothing to do with the Newman and Bynum fence request. Saulnier repeated the laundry list in several other pleadings.

---

[3]Applicable to non-profit corporations, such as the SPOA, business organizations code section 22.221(b) provides that "[a] director is not liable to the corporation, a member, or another person for an action taken or not taken as a director" unless the person seeking to establish the liability of a director proves that the director did not act (1) in good faith, (2) with ordinary care, and (3) in a manner the director reasonably believed to be in the best interest of the corporation. Tex. Bus. Orgs. Code Ann. § 22.221(b) (West 2012).

[4]Regarding enforcement of restrictive covenants, property code section 202.004(a) provides that "[a]n exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." Tex. Prop. Code Ann. § 202.004(a) (West 2014).

4

In October 2014, the trial court granted the Board members summary judgment on Saulnier's breach-of-contract claim. After the Board members nonsuited their contract claim against Saulnier and amended their answer, once again requesting sanctions, Saulnier nonsuited her claims against them for violating the property code and the business organizations code. The same day that Saulnier filed her third-amended petition—which alleged claims for breach of contract only to preserve her right to appeal,[5] violation of the property and business organizations codes against only the SPOA, and declaratory relief—the trial court granted summary judgment for the Board members on Saulnier's request for declaratory relief, her only remaining claim against them. Saulnier later filed a fourth-amended petition that was much like her third-amended petition but that alleged the declaratory-relief claim only for appellate purposes.

The trial court conducted two evidentiary hearings on the Board members' request for sanctions, which they argued were warranted because Saulnier had improperly sued them individually, because neither the property-code statute nor the business-organizations-code statute provides for a cause of action, and because the request for declaratory relief was improper, as was the "laundry list" that Saulnier had repeated in some of her pleadings. Saulnier's lead counsel, Steven Callahan, testified, among other things, that he had sued the Board members in their individual capacities because they lived in Saratoga and were

_____

[5]Saulnier confirmed that she asserted the breach-of-contract claim "solely . . . to preserve [her] right to appeal the summary judgment determination."

5

parties to the CCRs, that he had added the property-code and business-organizations-code claims only after the Board members raised those statutes in their first motion for summary judgment, that he thought the statutes provide for a cause of action, and that he saw no problem seeking a declaration premised upon non-liability in response to the Board members' claim for breach of the CCRs.  The trial court signed an order in March 2016 sanctioning Saulnier under rule 13 in the amount of $35,389.08.  No findings of fact or conclusions of law were filed.[6]

### III. GOOD CAUSE PARTICULARS

In her first issue, Saulnier argues that the trial court's order imposing sanctions fails to comply with rule 13's requirement that the particulars establishing good cause for the sanction be stated in the order.  The Board members refer us to the record and argue that the trial court satisfied the purpose of rule 13's particularity requirement.[7]

We review a trial court's order imposing sanctions for an abuse of discretion.  *Tarrant Cty. v. Chancey*, 942 S.W.2d 151, 154 (Tex. App.—Fort Worth 1997, no writ).  A trial court abuses its discretion if the court acts without

---

[6]The trial court also severed Saulnier's claims against the Board members into a new cause and granted Saulnier a partial summary judgment against the SPOA, which had previously filed for bankruptcy and had lost its trial counsel. Saulnier's claims against Newman and Bynum remained pending.

[7]Saulnier preserved this issue for appeal by advising the trial court of this specific complaint in her motion for new trial, which was overruled by operation of law. *See Thomas v. Thomas*, 917 S.W.2d 425, 433 (Tex. App.—Waco 1996, no writ).

reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

Rule 13 authorizes a trial court to impose sanctions against an attorney, a represented party, or both who file a pleading that is groundless and brought in bad faith or groundless and brought for the purpose of harassment. Tex. R. Civ. P. 13. The rule expressly states that "[n]o sanctions under this rule may be imposed except for good cause, *the particulars of which must be stated in the sanction order*." *Id.* (emphasis added). The particularity requirement serves several important purposes: (1) it ensures that the trial court is held accountable and adheres to the standard of the rule; (2) it requires the trial court to reflect carefully on its order before imposing sanctions; (3) it informs the offending party of the particular conduct warranting sanctions for the purpose of deterring similar conduct in the future; and (4) it enables the appellate court to review the order in light of the particular findings made by the trial court. *Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 522 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Texas courts apply the same rules of construction to rules of procedure as to statutes. *Bradt v. Sebek*, 14 S.W.3d 756, 762 (Tex. App.—Houston [1st Dist.] 2000, pet. denied), *cert. denied*, 532 U.S. 905 (2001). Thus, when a rule of procedure is clear, unambiguous, and specific, like the particularity requirement contained in rule 13, we construe the rule's language according to its literal

7

meaning. *See Murphy v. Friendswood Dev. Co.*, 965 S.W.2d 708, 709 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

The totality of the trial court's sanctions order states as follows:

> BE IT REMEMBERED that, on September 3, 2015 and December 28, 2015, the Court heard the motion of [the Board members] for sanctions against [Saulnier] and/or counsel advising her for violation of Rule 13, Texas Rules of Civil Procedure, the said motion being contained in [the Board members'] Supplemental Amended Answer.
>
> After hearing evidence and argument of counsel, the Court GRANTS the motion, finding that, as to [the Board members], [Saulnier's] action herein was brought, prosecuted, and continued in violation of Rule 13, Texas Rules of Civil Procedure, *in that the same was (a) groundless (without basis in law or fact and not warranted by any good faith argument for the extension, modification, or reversal of existing law) and (B) as to* [Saulnier]*, but not* [her] *counsel, brought in bad faith or for the purpose of harassment.*
>
> Upon such grant and finding, it is ORDERED, ADJUDGED, AND DECREED that [Saulnier] shall pay, on or before ninety (90) days from the signing of this Order by the Court, the sum of $35,389.08 to [the Board members], which the Court finds to be reasonable and necessary expenses, including attorney fees, caused by the misconduct. [Emphasis added.]

The order quite simply regurgitates the general standards by which rule 13 sanctions may be imposed but does not otherwise specify any facts establishing good cause for the sanction. This plainly fails to meet rule 13's good cause particularity requirement. *See, e.g., Overman v. Baker*, 26 S.W.3d 506, 511–12 (Tex. App.—Tyler 2000, no pet.) (reasoning similarly); *Tarrant Cty.*, 942 S.W.2d at 155 (same).

The Board members appear to implicitly acknowledge that the order lacks the requisite particularity by contending that the purpose of the requirement was

8

nevertheless satisfied because the trial court (1) conducted two lengthy evidentiary hearings, (2) took three months to sign its order, (3) "noted that the hearings confirmed the gamesmanship it had suspected for the previous year," and (4) granted continuances and special exceptions in favor of Saulnier. None of those facts (which except for (3) are procedural in nature) establish good cause to support the sanctions order.

The Board members also direct us to several statements made by the trial court during the hearings on the motion for sanctions. The trial court commented that Saulnier had listed her claim for violation of property code section 202.004 as a cause of action instead of something else and that it thought the statute created a rebuttable presumption instead of a cause of action. The trial court repeated its opinion about property code section 202.004 at another point during the hearing, stating,

> I'm just going to weigh in and say, as a matter of law and for the benefit of the Court of Appeals, that 202.004(a) in its clear terms, as far as this Court's concerned, does nothing but establish a rebuttable presumption but does not establish [a] cause of action. 202.004(b) does nothing but identify appropriate parties for standing but does not create a cause of action, as a matter of law.

While the trial court's comments, including several others that it made during the hearings, certainly may have telegraphed that it was leaning towards imposing sanctions—potentially because Saulnier pleaded property code section 202.004(a) as a cause of action—in the absence of engaging in rote speculation,

9

we have no way to confirm on which grounds, or on what basis, the trial court ultimately decided to impose the sanctions.[8]

Indeed, notwithstanding that the trial court's comments lack specificity, in the portion of her second issue arguing that no sanctionable conduct occurred, Saulnier identifies no fewer than five different grounds that could potentially support the trial court's order—(i) suing the Board members individually for breach of contract, (ii) asserting the property-code claim, (iii) asserting the business-organizations code claim, (iv) asserting the declaratory-judgment claim, and (v) pleading in such a way as to "drag" the Board members back into the lawsuit. The Board members, by contrast, argue that Saulnier engaged in sanctionable conduct by (i) obtaining an ex parte temporary restraining order against a party that was represented by counsel (the SPOA), (ii) suing them individually for breach of contract, (iii) asserting the property code and business-organizations code claims, and (iv) repeatedly pleading, for only an improper purpose, the "laundry list" that allegedly demonstrated "[t]he Board's Desire and Motivation to Harm [Saulnier]." Between the parties, that equates to *seven* different grounds (and many different potential combinations of those seven grounds) that the trial court may have relied upon to sanction Saulnier. This scenario is not like a summary judgment, in which a party can move for summary

---

[8]The cases cited by the Board members are therefore inapposite. *See Gaspard v. Beadle*, 36 S.W.3d 229, 239 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Randolph v. Walker*, 29 S.W.3d 271, 277–78 (Tex. App.—Houston [14th Dist.] 2000, pet denied.).

10

judgment on multiple grounds, the trial court can grant summary judgment in a nonspecific order, and we can affirm the trial court's judgment on any ground that is supported by the record. Rather, rule 13 expressly requires the particulars establishing good cause for the sanction to be stated in the order. That does not exist here, we cannot otherwise decipher the trial court's reasoning from the record (insofar as that approach is acceptable), and we may not speculate on which ground or grounds the trial court chose to sanction Saulnier.

Accordingly, the trial court abused its discretion by not complying with rule 13's good cause particularity requirement. The error is harmful. *See* Tex. R. App. P. 44.1(a)(1), (2). We sustain Saulnier's first issue and have no need to reach her other two. *See* Tex. R. App. P. 47.1.

## IV. MOTION TO STRIKE

Saulnier asks us to strike, or at least to not consider, the Board members' response to her motion for new trial—which they filed after the motion for new trial was overruled by operation of law and which they designated for inclusion in a supplemental clerk's record on appeal—because the response and the evidence attached to it were not before the trial court when it ruled on the motion for sanctions. Because we do not reach Saulnier's second issue complaining that she did not violate rule 13, and because the disputed filing has no relevance to our resolution of Saulnier's dispositive first issue, we deny her motion to strike as moot.

11

## V. Conclusion

The Board members argue that we should abate this appeal if we sustain Saulnier's first issue. Saulnier prays that we reverse and render judgment in her favor. We do neither. Because we limited our analysis to the propriety of the sanctions order but did not otherwise reach the merits of the order, we reverse and remand this cause to the trial court for further proceedings consistent with this opinion. *See, e.g.*, *Overman*, 26 S.W.3d at 512, 513 (reversing and rendering because order not only failed to satisfy particularity requirement but also because good cause did not exist to support sanctions); *Tarrant Cty.*, 942 S.W.2d at 155–56 (same).

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  MEIER, GABRIEL, and SUDDERTH, JJ.

DELIVERED:  April 20, 2017

12