Vasilios **KARAGOUNIS**, Appellant,

v.

**PROPERTY COMPANY OF AMERICA, Appellee.**

No. 07–97–0287–CV.

Court of Appeals of Texas, Amarillo.

June 23, 1998.

Law Offices of Charles Nicholson (Charles Nicholson), San Antonio, for appellant.

Davis & Wilkerson, P.C. (Kelly A. McDonald), San Antonio, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

### ON MOTION FOR REHEARING

QUINN, Justice.

Vasilios Karagounis ("Karagounis") has moved for rehearing. We deny the motion, withdraw our original opinion dated May 1, 1998, and substitute the following in its stead.

Karagounis appeals from a final judgment declaring that he take nothing against Property Company of America ("PCA") and sanctioning Karagounis for initiating in bad faith and pursuing a groundless suit. Though encompassed within two points, he actually presents four issues for review. The first concerns whether Texas Rule of Civil Procedure 13 applied to the proceeding, the second, whether sanctions could issue when a party simply lacked sufficient evidence to support its claim,[1] the third, whether he was afforded proper notice of the sanctions hearing, and fourth, whether the Texas Rules of Civil Procedure prevented the trial court from entering a judgment on the merits. We affirm in part and reverse in part.

### Background

Karagounis initiated a suit against PCA and others for damages sustained in a fire at his apartment. The case was set for trial on March 24, 1997. Karagounis appeared in court *pro se* on that date, announced that he was not ready to proceed because he lacked an attorney, and requested a continuance.[2] Continuance was denied. Nevertheless, trial was postponed until the next day. Karagounis failed to appear when the case was called for trial on the 25th of March. However, the court proceeded to hear PCA's request for sanctions under Rule 13 of the Texas Rules of Civil Procedure. The request had been included in its amended answer filed several weeks earlier. Sanctions were sought because Karagounis' suit was allegedly groundless and initiated in bad faith. After hearing evidence presented by PCA's legal counsel, the trial court entered the aforementioned final judgment.

Karagounis then timely moved for a new trial, contending that he had discovered new evidence and that PCA "had not file [sic] a Counterclaim on February 28th [sic] 1997, as required by TRCP 47, [sic] and 97." When that relief was denied him by written order,

he again moved the court to "reconsider new trial." Though colored in a different shade, the grounds alleged therein again involved newly discovered evidence and the impropriety of the court awarding sanctions. That motion too was denied by written order.

### Issue One—The Applicability of Rule 13

Under this issue, Karagounis· posits that sanctions could not be awarded under Rule 13 of the Texas Rules of Civil Procedure because chapter 10 of the Texas Civil Practice and Remedies Code supplanted the rule. Both deal with the levy of sanctions against litigants who file groundless pleadings in bad faith. Furthermore, the legislation enacting chapter 10 dictates that the provisions of the chapter take effect on September 1, 1995, and that they apply "only to a pleading or motion in a suit commenced on or after that date." Tex. Civ. Prac. & Rem.Code Ann. § 10.001 historical note (Vernon Supp.1998) [Act of May 18, 1995, 74th Leg., R.S., ch. 137, § 1, 1995 Tex. Gen. Laws 977, 978]. A pleading or motion "in a suit commenced before the effective date ... is governed by the law applicable to the pleading or motion immediately before the effective date ... and that law is continued in effect for that purpose." *Id.* Since the action from which this appeal arose was initiated after September 1, 1995, concludes Karagounis, Rule 13 had no application. We disagree.

Section 10.006 of the Texas Civil Practice and Remedies Code states that "[n]otwithstanding Section 22.004, Government Code, the supreme court may not amend or adopt rules in conflict with this chapter." From this we glean the legislature's intent. It did not purport to supercede the supreme court's authority to enact rules of court concerning sanctions. Nor did it purport to negate any rules of court which may also regulate the topic of sanctions. Rather, it prohibited the court from enacting rules which conflict with chapter 10. In oth-

---

1. We note that Karagounis' statement and argument of this particular issue is highly abbreviated and obtuse. However, we construe his points of error liberally and consider both the points and related arguments in interpreting them. *See Anderson v. Gilbert*, 897 S.W.2d 783, 784–85 (Tex.1995) (holding that a party's arguments, and not just the wording of a point of error, should be considered).

2. Karagounis released his counsel, with approval of the court, shortly before the date on which he was to appear at trial.

er words, as long as the court's rules do not conflict with the provisions of the chapter, they can enjoy force and effect.[3] If the legislature intended anything more, it could have so said. Consequently, we overrule this contention.[4]

### Issue Two—Sanctions Because a Party Lacks Evidence to Prove a Claim

Under this issue, Karagounis' argument is twofold. Initially, he asserts that sanctions could not issue simply because he failed to present sufficient evidence to support his claim. Then, he suggests that in denying PCA's motion for summary judgment, the trial court implicitly found that his allegations were supported by some evidence. We sustain the argument in part.

### Standard of Review

■ In addressing a request for sanctions under Rule 13 of the Texas Rules of Civil Procedure, the trial court exercises its considered discretion. *Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex.App.—Dallas 1994, writ denied). Given this, we cannot interfere with the decision reached unless we conclude that the trial court's discretion was abused. *Id.* At the very least, this requires a showing that the court acted arbitrarily or unreasonably, such as when it bases its order on an incorrect interpretation of the law or a clearly erroneous assessment of the evidence. *Id.* So too can discretion be abused if the procedural mechanisms in place to guide the court's determination are ignored. For instance, if the rule of law requires the court to conduct a hearing and receive evidence before it can make a decision and the court does neither, then the court fails to do those things necessary to enable it to soundly exercise its discretion. The result is an abuse of discretion.

■ Texas Rule of Civil Procedure 13 dictates that in signing a pleading, motion, or

other paper, counsel certifies that he read the document and that the allegations contained in it are, to the best of his knowledge, neither 1) groundless *and* brought in bad faith or 2) groundless *and* brought for the purposes of harassment. *Monroe v. Grider*, 884 S.W.2d at 817; *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex.App.—Dallas 1993, no writ). This rule serves to "check abuses in the pleading process, i.e. to insure that at the time the challenged pleading was filed the litigant's position was factually well grounded and legally tenable." *Home Owners Funding Corp. v. Scheppler*, 815 S.W.2d 884, 889 (Tex.App.—Corpus Christi 1991, no writ). In other words, what Rule 13 regulates is the *signing* and *filing* of groundless pleadings in bad faith or for purposes of harassment, not the pursuit of an action later determined to be groundless *after* pleadings were filed. As much is revealed in the rule itself when it declares that "[i]f a pleading, motion or other paper is *signed* in violation of this rule, the court ... shall impose an appropriate sanction...." TEX.R. CIV. P. 13 (emphasis added). It says nothing about levying sanctions if one pursues an action or pleading thought legitimate when filed but subsequently found baseless. As a result, the circumstances pivotal to the determination of whether sanctions should issue are those in existence at the time the pleading in question was signed and filed. *Monroe v. Grider*, 884 S.W.2d at 817; *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 71 (Tex.App.—El Paso 1994, writ denied); *McCain v. NME Hosps., Inc.*, 856 S.W.2d at 757; *Home Owners Funding Corp. v. Scheppler*, 815 S.W.2d at 889.

■ Next, since it is presumed that counsel acted in good faith, TEX.R. CIV. P. 13, the burden lies with the movant to prove the criteria prerequisite to recovering sanctions. *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993); *Campos v.*

---

**3.** Since Karagounis does not argue that Rule 13 and section 10, *et seq.*, of the Civil Practice and Remedies Code conflict, we need not address whether the latter pre-empted the former on that basis.

**4.** A motion or counterclaim requesting sanctions for a groundless filing after September 1, 1995

may utilize *both* Rule 13 and section 10.001. In *Alexander v. Alexander*, sanctions were requested due to violations of both Rule 13 and section 10.001 for a groundless filing that took place on July 26, 1996. 956 S.W.2d 712 (Tex.App.—Houston [14th Dist.] 1997, pet. denied).

*Ysleta Gen. Hosp., Inc.*, 879 S.W.2d at 71. That is, it must establish not only the frivolity of its opponent's claim but also the improper motives underlying the decision to file the suit, motion, or document. This in turn makes it imperative for the trial court to convene and conduct an *evidentiary* hearing. *Bisby v. Dow Chemical Co.*, 931 S.W.2d 18, 21 (Tex.App.—Houston [1st Dist.] 1996, no writ); *McCain v. NME Hosp., Inc.*, 856 S.W.2d at 757–58; *see* TEX.R. CIV. P. 13 (stating that the court must provide the litigants "notice and hearing"). "Without hearing evidence on the circumstances surrounding the filing of the pleading and the signer's credibility and motives, the trial court ha[s] no evidence to determine that the appellants or their attorneys filed the pleading in bad faith or to harass." *McCain v. NME Hosps., Inc.*, 856 S.W.2d at 757–58; *accord Bisby v. Dow Chemical Co.*, 931 S.W.2d at 21 (stating the same). Similarly, it is equally imperative that notice of the foregoing hearing be afforded the parties. TEX.R. CIV. P. 13. If one or the other is denied to the litigant against whom sanctions are sought, then it can hardly be said that the litigant received due process before being punished.

### Application of the Standard

As to the contention that sanctions were inappropriate because the court denied PCA's motion for summary judgment, we disagree.[5] Simply put, nothing of record indicates that the court ever granted or denied the motion. Given this, we can hardly conclude that the court denied summary judgment, which in turn, prevents us from inferring that the court implicitly determined that some evidence existed to buttress Karagounis' claim.

As to the contention that sanctions could not issue simply because he failed to present sufficient evidence to support his claim, we interpret it as questioning the legal basis

upon which the court acted. As revealed by testimonial evidence at the sanctions hearing, PCA's counsel provided Karagounis' counsel with evidence which allegedly established that the suit was baseless. Yet, Karagounis continued to proceed with the action, rather than dismiss it. To "*continue* to maintain this suit after the date that we got this information and fully disclosed it to the Plaintiff's lawyer, fully produced all documents necessary to prove it to the Plaintiff through his Attorney," said PCA's counsel, was to act in a manner warranting sanctions. (emphasis added). The court agreed as evinced by its finding "that Plaintiff's *continued* assertions against Defendant after February 27, 1997 are groundless and brought in bad faith or for the purpose of harassment." (emphasis added).[6] *See* TEX.R. CIV. P. 13 (obligating the court to state the particular basis upon which sanctions were issued); TEX. CIV. PRAC. & REM.CODE ANN. § 10.005 (requiring the court to describe the conduct which warranted sanctions).

As can be seen from PCA's argument and the court's declaration, Karagounis was not sanctioned for signing and filing a frivolous suit, but for *continuing* his suit once PCA provided him with evidence which allegedly rebutted his contentions. Yet, Rule 13, by its very words, only encompasses the *initiation* of a frivolous action for improper motive not the continuation of a suit after it is shown to be baseless. Thus, sanctions could not be levied under Rule 13. And, in doing so, the trial court abused its discretion by misinterpreting Rule 13. Finally, given that sanctions were assessed to punish conduct outside the scope of the rule, we must also conclude that the trial court's error was harmful.

This is not to say that we condone a litigant's conscious decision to further prosecute a claim or defense if same is shown to be groundless prior to trial. Such conduct is as

---

5. PCA moved for summary judgment on the grounds that it owed no legal duty to Karagounis. Owing no duty to Karagounis, it was argued, PCA could not be held responsible for any injury Karagounis suffered.

6. The February 27th date referred to by the court did not coincide with any date on which Karagounis signed and filed a pleading or motion. Rather, it was the date on which PCA forwarded Karagounis' information which it thought conclusively disproved his cause of action. By that time, the suit had been pending for some seventeen months.

reprehensible as knowingly filing a frivolous lawsuit in the first place. But we cannot read into rules or laws that which, by their own terms, is not there. Nevertheless, we would invite the appropriate governing bodies to adopt rules addressing situations like those discussed today.[7]

### Issue Three—Failure to Notice Sanctions Hearing

■ Under this issue, Karagounis posits that sanctions could not be awarded given the court's failure to provide him sufficient prior notice of the hearing. In reviewing this ground, we found that he filed a motion for new trial and to reconsider the order denying new trial. Yet, in neither did he raise the assertion now before us. Nor was it presented to the trial court via any other means. Such was required to preserve it for appeal.[8] TEX.R.APP. P. 33.1(a)(1). Consequently, it has been waived. *See HBA East, Ltd. v. JEA Boxing Co.*, 796 S.W.2d 534, 538–39 (Tex.App.—Houston [1st Dist.] 1990, writ denied), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 998 (1991) (holding that the appellant waived his claim that he was denied prior notice of the hearing on a motion for default judgment because the issue was not first presented to the trial court).

### Issue Four—Judgment Adjudicating the Merits

Under this issue, Karagounis posits that the judgment is defective since the trial court could not rule upon the merits of the case. That is, according to Karagounis, when a party fails to appear for trial, Texas Rule of Civil Procedure 165a restricts the trial court to dismissing the suit as opposed to addressing its merits. *See Tewell v. Tewell*, 599 S.W.2d 351, 354 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.) (stating that dismissal, as opposed to an adjudication on

the merits, is the appropriate relief *vis-a-vis* a suit that has not been diligently prosecuted). Moreover, in ordering that he take nothing against PCA after he failed to appear for trial, Karagounis argues that the court purportedly adjudicated the merits of his claim, which it could not. We overrule the point for several reasons.

■ First, we need not consider the issue for Karagounis did not include it within his motion for new trial or for reconsideration or otherwise present it first to the trial court. That was a prerequisite. TEX.R.APP. P. 33.1(a)(1); *Smith v. Babcock & Wilcox Constr. Co.*, 915 S.W.2d 22, 26 (Tex.App.—Austin 1994, no writ); *McCain v. NME Hosps., Inc.*, 856 S.W.2d at 755; *Andrews v. ABJ Adjusters, Inc.*, 800 S.W.2d 567, 568–69 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Consequently, the matter has been waived.

■ Second, even if it were not waived, we find no error. This is so because Karagounis' argument is premised on the mistaken belief that the court entered judgment against him simply because he failed to appear. He ignores the fact that the court had before it, when the cause came to trial, what it considered to be a counterclaim for sanctions. *See New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex.App.—Dallas 1993, no writ) (recognizing that a counterclaim for relief under Rule 13 was an appropriate way to obtain sanctions). As previously mentioned, PCA requested such relief since it believed that the suit was groundless and initiated in bad faith or for purposes of harassment.

Another fact ignored by Karagounis is that the court concluded that his suit was "frivo-

---

**7.** Rule 11 of the Federal Rules of Civil Procedure addresses this issue:

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or *later advocating*) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that . . .

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of a new law. . . .

FED.R.CIV P. 11 (italics added)

**8.** Additionally, we note that our reversal of the sanctions moots the issue of notice.

lous" and "groundless." More importantly, logic dictates that before the court could have so concluded, it had to have adjudicated his claims. And, having adjudicated them for purposes of awarding sanctions, the court did not err in entering a judgment on the merits rejecting the claims.[9] In sum, the court did not act upon Texas Rule of Civil Procedure 165a. Indeed, the latter was never mentioned by anyone below. It simply adjudicated Karagounis' claims, found them wanting, and entered judgment on that finding.

Accordingly, we reverse that portion of the judgment levying sanctions upon Karagounis and remand that issue for further proceedings. In all other respects, however, the judgment is affirmed.

9. Our conclusion that the trial court erred in awarding sanctions does not affect its finding that the suit was groundless. Again, we found error because the court could not sanction Karagounis for *continuing* to prosecute a groundless suit. Whether or not the claims were groundless went unaddressed. Nor did Karagounis question the legal or factual sufficiency of the evidence underlying the determination that his claims were frivolous.