

# NUMBER 13-14-00491-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MARLA CUELLAR,** **Appellant,**

**v.**

**OMAR MALDONADO,** **Appellee**.

---

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

Appellant, Marla Cuellar, appeals a $60,000 award of attorney's fees assessed against her and her attorney as sanctions in an election contest that she filed against appellee Omar Maldonado.[1]  *See* TEX. ELEC. CODE ANN. § 232.002 (West, Westlaw

---

[1] This is one of four election contest cases, simultaneously filed, arising from the same factual background and same primary election.  Two of the cases were assigned to different trial court judges, and this case and a companion case were assigned to the Honorable J. Manuel Bañales.  This Court previously reversed and remanded the trial court's orders granting pleas to the jurisdiction in the underlying case and the companion case.  *See Cuellar v. Maldonado*, Nos. 13-14-00228-CV & 13-14-00230-CV, 2014 WL

through 2013 3d C.S.) ("Any candidate in an election may contest the election."). We reverse and render.

## I. BACKGROUND

Cuellar was a candidate for judge of the County Court at Law Number 8 of Hidalgo County, Texas in the Democratic Primary Election. The challenged election was held on March 4, 2014, and the final canvass was held on March 14, 2014. During the voting in this election, a voter reported in a well-documented incident that his vote for one candidate in one of the races on the ballot repeatedly reflected as a vote for a different candidate on the voting machine he utilized.

On March 19, 2014, in response to the voting error report, the District Attorney of Hidalgo County impounded the voting machines and ballots used in the Democratic Primary Election in Hidalgo County to conduct an investigation and determine if criminal conduct occurred in connection with the election. *See id.* § 273.001(b) (West, Westlaw through 2013 3d C.S.) ("A district or county attorney having jurisdiction or the attorney general may conduct an investigation on the officer's own initiative to determine if criminal conduct occurred in connection with an election."). Subsequently, a grand jury authorized the use of investigation funds to retain a firm to perform a forensic audit of the voting machines utilized in the election.

On March 22, 2014, appellant filed an election contest against Omar Maldonado. In her original petition, Cuellar alleged, in relevant part, as follows:

---

2158135, at *1 (Tex. App.—Corpus Christi May 16, 2014, no pet.) (mem. op.) (consolidated opinion). Only this case and the companion case resulted in the award of sanctions or attorney's fees. By separate opinion issued this same date, this Court addresses the trial court's imposition of attorney's fees in the companion case. *See Ortiz v. Singleterry*, No. 13-14-00494-CV, 2015 WL ___, at *_ (Tex. App.—Corpus Christi Mar. 5, 2015, no pet. h.) (mem. op.).

2

5.     This suit is brought for the purpose of contesting the Hidalgo County Court at Law No. 8, Democratic Primary Election. Said election was held on March 4, 2014, and the Canvass was conducted on March 14, 2014 at which time the official election results were determined to be as follows:

| Candidate | Votes Received | Percent |
|---|---|---|
| Julian Castaneda | 2,599 | 6.28% |
| Omar Maldonado | 21,457 | 51.82% |
| Marla Cuellar | 17,353 | 41.91% |

Contestee Omar Maldonado was declared the winner because he received more than 50% of the votes.

6.     Contestant will prove by clear and convincing evidence that a sufficient number of illegal votes were counted to affect the outcome of the election; that either through malfunction or illegal manipulation, who voted for one candidate had their votes re-cast for other candidates and that persons who voted for Marla Cuellar had their votes counted for one of the other candidates (Exh. A); election machines either malfunctioned or were illegally tampered with to affect the outcome of the election (Exhs. A & B); election officials or other persons officially involved in the administration of the election witnessed that election machines appeared to either malfunction or were tampered with so that the outcome of the election was affected (Exhs. B & C); many complaints were brought to the attention of the Hidalgo County Elections Administrator to raise doubts concerning the accuracy of the election results and of the functioning of the election machines *Id.*; the election process failed to count legal votes, and/or engaged in other fraud or illegal conduct or made mistakes that precluded an accurate count of the vote cast.

7.     Contestant would also aver that there were irregularities in the casting and counting of ballots in this election to the extent that the true outcome would result in the Contestant being declared the winner or that the true election result cannot be ascertained, thereby requiring the voiding of the election and the need for a new election.

8.     Contestant would also aver that the election machines used in the election be inspected by the appropriate expert or authority designated by the Court to determine if the election machines were either faulty or were tampered with so that the true outcome of the election was affected.

3

Exhibit A to the petition was an incident report completed by Benito Garza detailing that he attempted to vote for Rene Guerra in the district attorney's race; however, the voting machine he utilized repeatedly cast his vote in favor of Guerra's opponent. After seeking assistance from voting officials, Garza's vote was canceled, and he used a different machine to cast his vote.

Exhibit B to the petition consisted of an affidavit from Richard Alvarez, an executive assistant to the Hidalgo County Judge. He stated that the first day of early voting in the Democratic primary election commenced on February 18, 2014. Early that morning, he received a call informing him that a voting problem had occurred at early voting at Precinct 3. He immediately went to the polling site. Upon arrival, Alvarez was informed that voter Benito Garza had cast a vote in the race for Hidalgo County District Attorney for the incumbent Rene Guerra, but upon review of the ballot, he discovered that the voting machine recorded a vote for Guerra's opponent. Alvarez was told and he verified that an election judge at the polling site had witnessed the above described occurrence and that Garza had attempted numerous times to cast his vote for Guerra, but the voting machine continued to list his vote as having been cast for Guerra's opponent.

Alvarez stated that he recommended to the election judge at the polling place that the voting machine used by Garza be segregated and removed from service so that it could be examined and the cause for the malfunction be determined. Garza was allowed to vote on a separate machine, and the malfunctioning machine was taken out of commission. However, the election judge then informed the Hidalgo County elections division about the issue. The Elections Division sent an employee to examine and

4

recalibrate the voting machine.  The voting machine was recalibrated and placed back in use.

Exhibit C to Cuellar's petition consisted of several letters sent to the Hidalgo County Judge requesting an investigation into the accuracy of the voting machines.  One of the letters was signed by several individuals and stated that it "has been brought to our attention that numerous inconsistencies and discrepancies have appeared in our analysis of each candidate's races.  We therefore ask that a forensic expert inspect each voting machine to ensure that they have not malfunctioned or been subjected to fraud or tampering."  The letter explained that the "integrity of the voting process is what is at issue.  We ask that you take appropriate action to ensure that this and future elections will be without question."

In response to the contest, Maldonado filed a plea to the jurisdiction, which was granted by the district court.  Cuellar appealed that order, and we reversed and remanded. *Cuellar v. Maldonado*, Nos. 13-14-00228-CV & 13-14-00230-CV, 2014 WL 2158135, at *1 (Tex. App.—Corpus Christi May 16, 2014, no pet.) (mem. op.) (consolidated opinion).

Subsequently and during the course of the election contest, Cuellar attempted to obtain access to the voting machines by attempting to intervene in the proceedings initiated by the district attorney's office, which had resulted in the impoundment of the voting machines, and by seeking permission to allow her own expert to examine the machines.  Her requests were denied.  The trial of this cause was reset three times in order to obtain the results of the forensic examination of the voting machines.

The forensic report on the voting machines was not issued until August 5, 2014.  The report found "no evidence to conclude that tampering had occurred" with any of the

5

voting machines. On August 13, 2014, the parties appeared for trial and, in view of the forensic report, Cuellar nonsuited her case. The parties proceeded to hear Maldonado's motion for sanctions against Cuellar pursuant to Texas Rule of Civil Procedure 13 and chapters 9 and 10 of the Texas Civil Practice and Remedies Code. *See* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. §§ 9.012, 10.001 (West, Westlaw through 2013 3d C.S.).[2] After an evidentiary hearing, the trial court awarded Maldonado $60,000 for sanctions and attorney's fees against Cuellar and her attorneys, jointly and severally, and further awarded costs of court and post-judgment interest.

This appeal ensued. Cuellar raises three issues: (1) the trial court lacked the authority to issue any orders in this case because she had filed a timely, mandatory objection to the assignment of the trial court; (2) the trial court erred in granting attorney's fees as sanctions because this cause was not frivolous; and (3) the trial court erred in awarding attorney's fees as sanctions because Maldonado failed to prove a reasonable fee award.[3]

## II. ELECTION CONTESTS

The focus of a trial court's inquiry in an election contest is set out in section 221.003(a) of the election code as follows:

> (a)  The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not true because:
>
> (1)  illegal votes were counted; or

---

[2] Maldonado did not challenge appellant's election contest under Texas Rule of Civil Procedure 91a. *See* TEX. R. CIV. P. 91a (governing the dismissal of baseless causes of action).

[3] Cuellar's brief was filed on December 5, 2014. On February 17, 2015, Maldonado filed a motion for leave to file his brief and tendered his brief to the Court that same day. We grant leave and accept Maldonado's brief as filed.

6

> (2) an election officer or other person officially involved in the administration of the election:
>
> (A) prevented eligible voters from voting;
>
> (B) failed to count legal votes; or
>
> (C) engaged in other fraud or illegal conduct or made a mistake.

TEX. ELEC. CODE ANN. § 221.003(a) (West, Westlaw through 2013 3d C.S.). "To set aside the outcome of an election, the contestant must prove by clear and convincing evidence that a violation of the election code occurred and such violation materially affected the outcome of the election." *Duncan–Hubert v. Mitchell*, 310 S.W.3d 92, 97–98 (Tex. App.—Dallas 2010, pet. denied); *see Gonzalez v. Villarreal*, 251 S.W.3d 763, 773, 777–78 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.); *see also Regalado v. Munoz*, No. 13-14-00274-CV, 2014 WL 3542056, at *2 (Tex. App.—Corpus Christi July 17, 2014, no pet.) (mem. op.); *Vazaldua v. Muñoz*, No. 13–14–00275–CV, 2014 WL 2937014, at *6 (Tex. App.—Corpus Christi June 20, 2014, no pet.) (mem. op.). An election's outcome may be materially affected when a different and correct result would have been reached in the absence of irregularities, or if irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will. *Duncan–Hubert*, 310 S.W.2d at 98; *see Gonzalez*, 251 S.W.3d at 778; *see also Vazaldua*, 2014 WL 2937014, at *6.

It is an undeniable feature of our political system and tradition that an "individual's right to vote . . . is protected as a fundamental right." *Veasey v. Perry*, No. 13–CV–00193, 2014 WL 5090258, at *41 (S.D.Tex. Oct. 9, 2014), *stayed by* 769 F.3d 890 (5th Cir. (Tex.) Oct. 14, 2014) (citing *Burdick v. Takushi*, 504 U.S. 428, 433–34 (1992); *Kusper v. Pontikes*, 414 U.S. 51, 55 (1973)). Specifically with regard to the facts of this case, we

7

note that several federal circuits have held a "voting machine malfunction is the paradigmatic example of a 'garden variety' election dispute." *See, e.g., Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005); *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978); *Hennings v. Grafton*, 523 F.2d 861, 864–65 (7th Cir. 1975); *see also Broyles v. State of Tex.*, 618 F.Supp.2d 661, 694 (S.D.Tex. 2009).

### III. OBJECTION TO ASSIGNMENT

In her first issue, Cuellar contends that the trial court lacked the authority to issue any orders in this case because she had filed a timely, mandatory objection to the assignment of the trial judge. Cuellar contends that chapter 74 of the Texas Government Code, which establishes the procedures for the appointment of judges, applies to this case, and thus the trial court's recusal was automatic once she had timely objected.

Following this Court's remand of this case to the trial court, the Presiding Judge of the Fifth Administrative Judicial Region, the Honorable J. Rolando Olvera, assigned the Honorable J. Manuel Bañales to hear the case. On June 2, 2014, Cuellar filed an objection to the assignment of Judge Bañales. On June 3, 2014, Judge Olvera overruled the objection as per the following order:

> Each Contestant, MARLA CUELLAR and REY ORTIZ, in the above captioned causes, has filed an Objection to Assignment against Judge J. Manuel Bañales, Senior Judge, the Judge assigned to each cause. Each objection was filed under § 74.053 of the Government Code.
>
> These two causes are election contests brought under § 231 and § 232 of the Election Code. In an election contest, the judge of the judicial district in which an election contest is filed is automatically disqualified from presiding in the cause. Section 231.004(b), Elec. C., requires that the Presiding Judge of the Administrative Judicial Region shall then appoint a special judge to preside in the contest. The assigned judge must not reside in the territory covered by the election contest. Judge Bañales does not reside in the territory covered by the election contest. Judge Bañales was assigned under § 231.004(b), Elec. C.

8

Section 74.053(a) and (b), Govt. C., provide that a party in a civil case may file an objection to a judge assigned "to a trial court *under this chapter*" [emphasis added]. Judge Bañales was not assigned under [c]hapter 74 of the Government Code. The plain language of § 74.053, Govt. C., provides that an objection under § 74.053, Govt. C., applies *only* to an assignment under [c]hapter 74 of the Government Code. Accordingly, the Contestants' objections must be overruled.

IT IS THEREFORE ORDERED that the Contestants' objections to the assignment of Judge J. Manuel Bañales in these election contests be and are each OVERRULED.

Section 74.053 of the Texas Government Code provides:

(a)     When a judge is assigned to a trial court *under this chapter*:

   (1)     the order of assignment must state whether the judge is an active, former, retired, or senior judge; and

   (2)     the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.

(b)     If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case. Except as provided by Subsection (d), each party to the case is only entitled to one objection under this section for that case.

(c)     An objection under this section must be filed not later than the seventh day after the date the party receives actual notice of the assignment or before the date the first hearing or trial, including pretrial hearings, commences, whichever date occurs earlier. The presiding judge may extend the time to file an objection under this section on written motion by a party who demonstrates good cause.

(d)     An assigned judge or justice who was defeated in the last primary or general election for which the judge or justice was a candidate for the judicial office held by the judge or justice may not sit in a case if either party objects to the judge or justice.

(e)     An active judge assigned under this chapter is not subject to an objection.

(f)     For purposes of this section, notice of an assignment may be given and an objection to an assignment may be filed by electronic mail.

(g)     In this section, "party" includes multiple parties aligned in a case as determined by the presiding judge.

TEX. GOV'T CODE ANN. § 74.053 (West, Westlaw through 2013 3d C.S.) (emphasis added). If a properly filed objection under this statute is timely, the assigned judge's disqualification is automatic. *Id.* § 74.053(b); *In re Canales*, 52 S.W.3d 698, 701 (Tex. 2001) (orig. proceeding); *In re Honea*, 415 S.W.3d 888, 890 (Tex. App.—Eastland 2013, orig. proceeding).

Cuellar contends that the procedures set out in chapter 74 have been consistently applied to assignments made in election contest cases and thus Judge Bañales should have been automatically disqualified from hearing the election contest. In support of this contention, Cuellar cites *Flores v. Banner*, 932 S.W.2d 500, 501 (Tex. 1996) (per curiam), and *Flores v. Velasco*, 68 S.W.3d 86, 87 (Tex. App.—Dallas 2001, no pet.). These cases are election contests. *See Flores,* 68 S.W.3d at 87; *Flores,* 932 S.W.2d at 501. However, neither case addresses the applicability, or lack thereof, of the chapter 74 procedures to recusals in election contest cases.

Section 74.053 states explicitly that it applies "*when a judge is assigned under this chapter.*" *See* TEX. GOV'T CODE ANN. § 74.053 (emphasis added). In accordance with the statutory language, this section has been held to be applicable *only* when a judge is assigned by the presiding judge of the administrative judicial region pursuant to chapter 74. *See Cabrera v. Cedarapids Inc.*, 834 S.W.2d 615, 617 (Tex. App.—Houston [14th Dist.] 1992, *writ denied as improvidently granted*, 847 S.W.2d 247 (Tex. 1993); *Erbs v. Bedard*, 760 S.W.2d 750, 755 (Tex. App.—Dallas 1988, orig. proceeding); *R.J. Gallagher*

10

*Co. v. White*, 709 S.W.2d 379, 381 (Tex. App.—Houston [14th Dist.] 1986, no writ); *see also In re Flores*, 53 S.W.3d 428, 431 (Tex. App.—San Antonio 2001, no pet.) (holding that presiding judge of the administrative district who was hearing a recusal motion was not subject to a section 74.053 objection); *Gonzalez v. Ables*, 945 S.W.2d 253, 254 (Tex. App.—San Antonio 1997, no pet.) (holding that statutory procedures under section 74.053 were not applicable where judges exchanged benches under state constitutional provision for judges to hold courts for each other when they deem it expedient); *Weidner v. Marlin*, 937 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no writ) (concluding that visiting judge's assignment was pursuant to government code section 75.003; therefore, the judge was not assigned by the presiding judge of the administrative judicial region and a section 74.053 objection to the assignment was not appropriate); *State ex rel. Holmes v. Lanford*, 837 S.W.2d 705, 710 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding) (explaining that a party cannot "object under section 74.053 . . . to a judge who is not otherwise assigned to the case in accordance with the provisions of the [c]hapter 74"); *Meuth v. Hartgrove*, 811 S.W.2d 626, 628 (Tex. App.—Austin 1990, writ denied) (stating that a section 74.053 objection does not apply to assignment of trial judge by county administrative judge rather than presiding judge of the administrative judicial region).

In the instant case, Judge Olvera assigned Judge Bañales to hear the case pursuant to the provisions of the election code rather than chapter 74. Accordingly, the section 74.053 objection was not applicable, and Judge Bañales's recusal was not automatic. *See Cabrera*, 834 S.W.2d at 617; *R.J. Gallagher Co.*, 709 S.W.2d at 381; *Erbs*, 760 S.W.2d at 755. We overrule Cuellar's first issue.

11

## IV. FRIVOLOUSNESS

In her second issue, Cuellar contends that the trial court erred in granting attorney's fees as sanctions because this cause was not frivolous. The trial court's order detailed the award of sanctions in this case as follows:

The Court finds that Contestant alleged in her petition that based on irregularities—tampering with electronic voting and equipment and the resulting misdirecting of votes—that were reported in the race for District Attorney in the same primary election as hers, the final tabulation in her race for Judge of County Court at Law No. 8 may have been affected by the same irregularities. It was necessary, she alleged, that the voting machines be examined to determine whether any tampering had occurred or any votes misdirected in her race. She appears to be saying that, because of the alleged irregularity that occurred in another race, it must have occurred in her race as well. The Court finds that this pleading is groundless and frivolous without any allegation of facts to support it and that it was made in bad faith.

The Court further finds that, during her deposition testimony presented as evidence, Contestant admitted that she had no evidence to support her allegations, that she had no facts to support a charge of tampering of the voting machines, that no voter had complained of any irregularity in her race similar to what was reported in the District Attorney's race, that she had no evidence that any of [the] votes had been diverted to Contestee, and that she had no evidence of election fraud committed by anyone. The Court also finds that Contestant had no evidence that Contestee may have tampered with the election machines or the vote or the outcome of the election. Even so, she filed her election contest without knowledge of any facts to support it. The [Court] finds that this pleading is groundless and frivolous without any allegation of facts to support it and was made in bad faith.

A sanction may be imposed against a party, her counsel[,] or both. Counsel has a duty to make a good faith preliminary inquiry to determine whether facts exist to support a claim by a potential plaintiff and to plead sufficient facts to show that the claim has merit. Mere speculation or surmise is not enough. A careful reading of the petition shows that counsel did not plead facts to show that Contestant is entitled to relief. It is proper in this case to impose sanctions against both Contestant and her counsel.

We review the imposition of sanctions under an abuse of discretion standard. *See Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 373 (Tex. 2014); *Low v. Henry*, 221

S.W.3d 609, 614 (Tex. 2007); *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). To determine if the sanctions were appropriate or just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed. *Low*, 221 S.W.3d at 614; *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); *TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Further, in determining whether sanctions are appropriate, we must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *See Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 184 (Tex. App.—Texarkana 2011, no pet.); *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied); *R.M. Dudley Const. Co. v. Dawson*, 258 S.W.3d 694, 711 (Tex. App.—Waco 2008, pet. denied); *Shaw v. Cnty. of Dallas*, 251 S.W.3d 165, 170–71 (Tex. App.—Dallas 2008, pet. denied); *Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 669 (Tex. App.—Corpus Christi 2004, no pet.). In this regard, courts presume that pleadings and other papers are filed in good faith. *Nath*, 446 S.W.3d at 361; *Low*, 221 S.W.3d at 614; *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993). The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Nath*, 446 S.W.3d at 361; *Tanner*, 845 S.W.2d at 731.

In assessing the propriety of sanctions, we may not substitute our judgment for that of the trial court. *Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 491 (Tex. App.—Dallas 2005, no pet.); *Gibson v. Ellis*, 126 S.W.3d 324, 335 (Tex. App.—Dallas 2004, no pet.). An appellate court may reverse the trial court's ruling awarding sanctions only if the trial court acted without reference to any guiding rules and principles,

13

such that its ruling was arbitrary or unreasonable. *Nath*, 446 S.W.3d at 361; *Cire*, 134 S.W.3d at 838–39. We will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision. *Nath*, 446 S.W.3d at 361; *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). We examine the entire record to determine whether the trial court properly ordered sanctions. *See Am. Flood Research, Inc.*, 192 S.W.3d at 583.

As stated previously, Maldonado sought sanctions against Cuellar pursuant to Texas Rule of Civil Procedure 13 and chapters 9 and 10 of the Texas Civil Practice and Remedies Code for frivolous or groundless pleadings. If the trial court's imposition of sanctions is supported under any one of these legal bases, we will affirm the order. *See Zeifman v. Nowlin*, 322 S.W.3d 804, 809 (Tex. App.—Austin 2010, no pet.); *see also Ketterman v. Tex. Dep't of Family & Protective Servs.*, No. 01-12-00883-CV, 2014 WL 7473881, at *9 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no. pet. h.) (mem. op.).

### A. Chapter 9

Chapter 9 of the civil practice and remedies code precludes parties from filing pleadings that are groundless and brought in bad faith, or groundless and brought for the purpose of harassment, and the chapter allows the trial court to award sanctions against a party filing such a pleading. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 9.011–.012(a), (c). However, chapter 9 only applies in proceedings in which neither Rule 13 nor chapter 10 applies. *See id.* § 9.012(h). Moreover, chapter 9 only applies to actions in which claimants seek damages. *See id.* § 9.002(a). In the instant case, both Rule 13 and chapter 10 apply, and Cuellar did not seek damages in her election contest. Thus, chapter 9 does not apply to this case and the trial court could not have based its award

14

of sanctions on chapter 9. Accordingly, our analysis proceeds only under Rule 13 and chapter 10, and we sustain Cuellar's second issue to the extent that it pertains to the imposition of sanctions under chapter 9.

**B. Rule 13**

Texas Rule of Civil Procedure 13 states that a trial court may award sanctions against a party when the party files a pleading or motion that is groundless and brought in bad faith or is groundless and brought for the purpose of harassment. TEX. R. CIV. P. 13. Rule 13 reads in relevant part as follows:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. . . . If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215, upon the person who signed it, a represented party, or both.
>
> Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order.

*Id.* Rule 13 does not permit sanctions on the issue of groundlessness alone. *Nath*, 446 S.W.3d at 362–63. The filing in question must be groundless and also either brought in bad faith, brought for the purpose of harassment, or false when made. *Id.* Groundlessness is more than an ultimate determination that the claim is not a winner. *See Emmons v. Purser*, 973 S.W.2d 696, 700 (Tex. App.—Austin 1998, no pet.). To determine if a pleading was groundless, the trial court must objectively ask whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the pleading was filed. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d

15

331, 348 (Tex. App.—San Antonio 2006, pet. denied). "Reasonable inquiry" means the amount of examination that is reasonable under the circumstances of the case. *Robson v. Gilbreath*, 267 S.W.3d 401, 406 (Tex. App.—Austin 2008, pet. denied). We determine whether a reasonable inquiry has been made by looking at the facts available to the attorney and the circumstances that existed when the attorney signed and filed the pleading or motion. *See Robson*, 267 S.W.3d at 405; *Elkins v. Stotts–Brown*, 103 S.W.3d 664, 668 (Tex. App.—Dallas 2003, no pet.).

In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must consider the acts or omissions of counsel, not merely the legal merit of a pleading or motion. *See Parker v. Walton*, 233 S.W.3d 535, 540 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Bad faith is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes; bad faith does not exist when a party merely exercises bad judgment or is negligent. *Thielemann v. Kethan*, 371 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A party acts in bad faith if she has been put on notice that her understanding of the facts may be incorrect and she does not make reasonable inquiry before pursuing the claim further. *Robson*, 267 S.W.3d at 407. Moreover, a pleading is filed for the purpose of harassment if it is filed with the intent to annoy, alarm, and abuse another person. *See Thielemann*, 371 S.W.3d at 294; *Parker*, 233 S.W.3d at 539–40. Intent to harass may be proven with either direct or circumstantial evidence. *See Scheel v. Alfaro*, 406 S.W.3d 216, 227 (Tex. App.—San Antonio 2013, pet. denied); *Schexnider v. Scott & White Mem'l Hosp.*, 953 S.W.2d 439, 441 (Tex. App.—Austin 1997, no writ).

16

We see no evidence in the record before us indicating that the election contest was filed in bad faith or for the purpose of harassment. In this regard, we note that there is no evidence that Cuellar was put on notice that her understanding of the facts was incorrect or that she did not attempt to make reasonable inquiry before pursuing her claim. *See Robson*, 267 S.W.3d at 407. The record indicates that Cuellar attempted to gain access to the voting machines to conduct her own investigation. Further, there is no evidence, circumstantial or otherwise, that Cuellar filed the election contest with the intent to annoy, alarm, and abuse another person or that she acted for dishonest, discriminatory, or malicious purposes. *See Thielemann*, 371 S.W.3d at 294; *Parker*, 233 S.W.3d at 539–40. We emphasize that bad faith does not exist when a party merely exercises bad judgment or is negligent. *See Thielemann*, 371 S.W.3d at 294. Accordingly, we conclude that the trial court abused its discretion if it awarded sanctions pursuant to Texas Rule of Civil Procedure 13. *See* TEX. R. CIV. P. 13. We next consider whether sanctions were appropriate under chapter 10, and we sustain Cuellar's second issue insofar as it pertained to the imposition of sanctions under Rule 13.

### C. Chapter 10

Chapter 10 allows sanctions for pleadings filed with an improper purpose or that lack legal or factual support. *Nath*, 446 S.W.3d at 362. It provides that upon signing a pleading or motion, a signatory attests that: (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment

17

of new law; and (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West, Westlaw through 2013 3d C.S.). We construe the phrase "improper purpose" as the equivalent of "bad faith" under Rule 13. *See* TEX. R. CIV. P. 13; *Dike*, 343 S.W.3d at 183–84; *cf. Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Dirs.*, 198 S.W.3d 300, 321 (Tex. App.—Texarkana 2006, pet. denied). A court may not sanction a represented party under section 10.001 for unfounded legal contentions. *See* TEX. CIV. PRAC. & REM. § 10.004(d); *Nath*, 446 S.W.3d at 362. Chapter 10 specifies that one of the aims for imposition of sanctions for the filing of frivolous or groundless pleadings is to "deter repetition of the conduct or comparable conduct by others similarly situated." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(b). In determining whether a party conducted a reasonable inquiry, the facts and evidence available to the party and the circumstances existing when the party filed the pleading must be examined. *See Gomer v. Davis*, 419 S.W.3d 470, 480 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *R.M. Dudley Const. Co.*, 258 S.W.3d at 711; *Estate of Davis v. Cook*, 9 S.W.3d 288, 297 (Tex. App.—San Antonio 1999, no pet.); *Karagounis v. Prop. Co. of Am.*, 970 S.W.2d 761, 764 (Tex. App.—Amarillo 1998, pet. denied) (stating that "the circumstances pivotal to the determination of whether sanctions should issue are those in existence at the time the pleading in question was signed and filed"); *see, e.g., Low*, 221 S.W.3d at 616–17 (providing that we should evaluate the propriety of an attorney's inquiry and knowledge as of the time that the lawsuit was filed). Sanctions for frivolous or groundless pleadings do not apply to the pursuit of an action

later determined to be groundless after pleadings were filed. *See Gomer*, 419 S.W.3d at 481; *R.M. Dudley Const. Co.*, 258 S.W.3d at 711; *Overman v. Baker*, 26 S.W.3d 506, 509 (Tex. App.—Tyler 2000, no pet.); *Karagounis*, 970 S.W.2d at 764. Chapter 10 requires a court imposing sanctions to describe the conduct that violated the chapter and to "explain the basis for the sanction imposed." TEX. CIV. PRAC. & REM. CODE ANN. § 10.005.

In her brief, Cuellar specified that the allegations in her petition had evidentiary support:

> This suit was brought for the purpose of contesting the Democratic Primary Election for Hidalgo County Court at Law No. 8. The challenged election was held on March 4, 2014, and the final canvass was conducted on March 14, 2014. On March 19, 2014, the District Attorney of Hidalgo County sought and secured impoundment of the voting machines and the ballots used in the Democratic Primary Election in Hidalgo County. The grand jury investigation into alleged improprieties associated with the election and possible tampering or malfunction of the election machines used in the election authorized a forensic audit of the machines.

> These events led Cuellar to believe that possibly she was the victorious candidate but had lost because of voting machine malfunctions or illegal vote manipulation. However, Cuellar only had 10 days from the date of the final canvass to file her election contest . . . . The only way to preserve her rights was to file the election contest based on the irregular and questionable events that she had witnessed and on the fact that an Hidalgo County District Court and Grand Jury felt that the suspicions were sufficient to warrant the expenditure of thousands of dollars to impound and inspect the voting machines. Also, as her counsel, Cuellar's attorneys were obligated to file the election contest and protect her rights. For those reasons, the petition is limited and clear in its assertions. Only the election machines are placed into question. Maldonado is named as the contestee as required by the statute, but no malevolent actions or motives are attributed to him. Counsel for Cuellar did not serve needless interrogatories or production of documents on Maldonado, but rather focused efforts on securing access to the machines.

> Before the impoundment, several candidates signed a letter requesting that the County audit and investigate the machines in order to ensure that no improprieties had occurred. In addition, one of the earliest voters on Election Day had reported substantial problems using an electronic voting machine. The voter's complaint was verified by election

19

workers. In response to this publicly available evidence and, no doubt, other interviews, the grand jury contracted with an out-of-state firm to forensically audit the machines in question. ("There's been an impaneling of the grand jury in which they have alleged that there is either fraud or tampering with those machines. They are doing a forensic analysis of those machines." Testimony of Marla Cuellar).

Cuellar's election challenge was based on her belief that the voting machines had malfunctioned or had been tampered with and not on more traditional election contest themes such as have ineligible voters casting ballots or eligible voters being denied access. Cuellar suspected that the voting machines had been tampered with because: (1) her opponent, Maldonado, had posted election results almost identical to the final count before the official results had been publicly published; (2) instances of malfunction or tampering were reported to the County Judge; (3) a voter had reported the voting machines had cast a vote for the opponent of the candidate for whom he had voted; and (4) the grand jury impounded and investigated the voting machines. This action was properly commenced.

In support of her allegations, Cuellar also contends that the trial court's own actions illustrated that her case was not frivolous insofar as the trial court delayed the trial of this case until the forensic audit of the voting machines was completed.[4]

According to the record, Cuellar testified that "the evidence is in the machines," that the "basis of the lawsuit" was "whether there was malfunction of the machines or whether somebody tampered with the machines," and that she had no evidence to support her case other than that mentioned in her pleadings. However, Cuellar further testified that there were discrepancies in the early vote totals between the votes recorded and the recognized number of voters in each voting precinct. She also testified that her

---

[4] We note that election contests are not ordinary cases in law or in equity. *See Wooley v. Sterrett*, 387 S.W.2d 734, 737 (Tex. Civ. App.—Dallas 1965, no writ); *see also Vazaldua v. Muñoz*, No. 13-14-00275-CV, 2014 WL 2937014, at *3 (Tex. App.—Corpus Christi June 20, 2014, no pet.) (mem. op.). And "elections are politically time sensitive, and legislative remedies for contested elections are to be strictly followed." *Rodriguez v. Cuellar*, 143 S.W.3d 251, 260 (Tex. App.—San Antonio 2004, pet. dism'd) (op. on en banc reconsideration); *see Wooley*, 387 S.W.2d at 737–38, 742. In other words, "[t]he very nature of the proceedings is such that courts are called upon to speedily and expeditiously dispose of the subject matter without regard to some of the usual rules applicable in the ordinary civil action." *Wooley*, 387 S.W.2d at 737–38 (citations omitted); *see also Vazaldua*, 2014 WL 2937014, at *3.

opponent had posted the "official results" of the election on his Facebook campaign more than an hour before the results were available to the public, and the results he posted were almost exactly the same as the total number of final votes in her race. She agreed with opposing counsel that she had no other evidence to support her allegations and could not identify any election official who engaged in fraud or illegal conduct, or made a mistake which materially altered the election outcome.

At the hearing on sanctions, Cuellar's counsel stated that he had not propounded discovery because "the critical and only critical evidence that goes to the merits of this case is the forensic audit of . . . the voting machines." Counsel stated that Cuellar's case was based on the forensic audit, and that "if it showed that no — no malfunction had occurred and there had been no malfeasance, we would be prepared at that point to nonsuit our lawsuit." After the forensic analysis came forth, contestants nonsuited their cases.

The linchpin of Cuellar's case was the district attorney's actions in impounding and investigating the accuracy of the voting machines used in the election. With regard to this issue, the trial court concluded that:

> The Court is well aware that, after the irregularities that allegedly occurred in *one* race out of the many on the ballot in the March 2014 Primary Election in Hidalgo County, the District Attorney requested that a district court empanel the Grand Jury to investigate the matter. A district court did empanel a Grand Jury for that limited purpose. The District Attorney then employed a computer analyst competent to examine electronic voting machines and computer to determine whether any of the voting machines or computer had been tampered with in any way to affect the outcome of any election on the ballot. The inspection and analysis took longer than expected. The final report was presented to the District Attorney at the end of July and made available to the Court and the parties earlier this month. The report showed that there were no irregularities or discrepancies and that the results were correctly tabulated.

Contestee alleged that Contestant and her counsel had done no investigation to determine whether the voting machines or computers had been tampered with or any discovery in support of her contest. Contestant replied that [the] District Attorney's impoundment of the voting machines and other related equipment prevented Contestant from inspecting the machines and equipment and that she should not be faulted.

Although Contestant's response may be plausible, the Court still finds that Contestant [had] no facts *prior* to filing her election contest alleging that the voting machines and equipment had been tampered with or that votes had been misdirected to her detriment. Contestant simply had no good faith basis to believe that she had been cheated out of a victory.

Contestant also points out that her petition was based on information and belief based on the reports of voting irregularities in the District Attorney's race. Although the reports raised concerns of malfeasance or misfeasance concerning the conduct of the election, all the reports were limited to one race, the District Attorney's race. According to the evidence, there were no reports of similar complaints in any of the other contested races in the March Primary. Contestant had no evidentiary support for her allegations and claims; at most, her petition was supported by surmise, speculation[,] and hope.

In examining whether or not the trial court erred in imposing sanctions in such a case, we note that Maldonado contends that Cuellar failed to present evidence of her good faith and failed to present any evidence at the sanction hearing of her "white heart." Maldonado also contends that the scope of our review is limited to that evidence that was before the trial court at the sanction hearing. Maldonado's contentions misstate the burden of proof and the scope of review. In examining whether Cuellar's pleadings were sanctionable, we presume that they were filed in good faith, *see Nath*, 446 S.W.3d at 361; *Low*, 221 S.W.3d at 614; *Tanner*, 856 S.W.2d at 730, and Maldonado, as the party seeking sanctions, bears the burden of overcoming this presumption of good faith. *See Nath*, 446 S.W.3d at 361; *Tanner*, 845 S.W.2d at 731. Thus, it was incumbent on Maldonado to support his motion for sanctions with competent proof that (1) a reasonable inquiry into the allegations in Cuellar's pleadings would have disclosed that not all the

22

allegations in her pleadings had or would likely have evidentiary support, and (2) Cuellar did not make a reasonable inquiry before filing suit. *Unifund CCR Partners*, 299 S.W.3d at 97; *Low*, 221 S.W.3d at 617. Incompetent evidence, surmise, or speculation will not suffice for the proof required. *Unifund CCR Partners*, 299 S.W.3d at 97. Moreover, the scope of our review is not limited to the sanctions hearing, but includes the entire record that was before the trial court. *See Am. Flood Research, Inc.*, 192 S.W.3d at 583; *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet. denied); *Kutch v. Del Mar College*, 831 S.W.2d 506, 508 (Tex. App.—Corpus Christi 1992, no writ).

In the instant case, examining the facts and evidence available to Cuellar and the circumstances existing when she filed her election contest, we conclude that Maldonado did not meet his burden to rebut the presumption that Cuellar's pleadings were filed in good faith. *See Gomer*, 419 S.W.3d at 480; *R.M. Dudley Const. Co.*, 258 S.W.3d at 711; *Estate of Davis*, 9 S.W.3d at 297. At the time that Cuellar filed her election contest, she had knowledge of an allegation that a voting machine malfunctioned during the election. She further knew that numerous individuals had complained of "irregularities" in the election and that individuals had alleged that "numerous inconsistencies and discrepancies have appeared in our analysis of each candidate's races. Cuellar knew that the early vote totals in specific precincts, "specifically in my hometown of Weslaco, Texas, where we actually knew the people going in to vote" did not match the "number of votes in their voting precinct." Moreover, and significantly, she knew that the State of Texas, acting by and through the Hidalgo County Criminal District Attorney, filed an application for impoundment of the voting machines in connection with the March 2014 Democratic Primary Election on March 19, 2014, pursuant to Texas Election Code

23

Section 273.001(b) "to conduct an investigation and determine if criminal conduct occurred in connection with the election." The trial court in that case "being of the opinion that said application should be granted," had signed an order for immediate impoundment of the voting machines on March 19, 2014. Cuellar filed her election contest based on these events. The fact that the election contest was ultimately determined to be groundless after the forensic investigation of the machines revealed that they had not been tampered with does not show that she filed the contest without making a reasonable inquiry, or for an improper purpose, or in bad faith. *See Gomer*, 419 S.W.3d at 481; *R.M. Dudley Const. Co., Inc.*, 258 S.W.3d at 711; *Overman*, 26 S.W.3d at 509; *Karagounis*, 970 S.W.2d at 764.

## V. CONCLUSION

Applying the presumption that pleadings are filed in good faith and examining the evidence before the trial court, we conclude that Maldonado failed to produce evidence rebutting that presumption and supporting an award of sanctions. The trial court therefore abused its discretion in awarding sanctions. Having so concluded, we need not address Cuellar's third issue contending that the trial court erred in awarding attorney's fees as sanctions because Maldonado failed to prove a reasonable fee award. *See* Tex. R. App. P. 47.1. We reverse and render judgment denying Maldonado's motion for sanctions.


**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice


Delivered and filed the
5th day of March, 2015.

24