In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-20-00224-CV
_____

### DAVID BARNES, Appellant

### V.

### C.L. CRAWLEY, Appellee

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-11-15451-CV**

## MEMORANDUM OPINION

In 2015, David Barnes and Svetlana Boricovna Barnes were divorced in Montgomery County, Texas, and the trial court in that proceeding signed an Agreed Final Decree of Divorce.[1] Following the trial court's subsequent denial of a modification of their custody arrangement in early 2019, Svetlana fled to Russia with

---

[1]For purposes of clarity, we refer to Svetlana by her first name and Barnes by his last name.

their young sons and has not returned.[2] After she fled, Barnes sued C.L. Crawley, the attorney who represented Svetlana in the modification proceeding. Barnes appeals the trial court's judgment that he take nothing on his claims against Crawley and awarding attorney's fees to Crawley as a sanction against Barnes for filing a groundless lawsuit in violation of Texas Rule of Civil Procedure 13. In four issues, Barnes asks whether the trial court erred in: (1) determining the Order to Deliver Children's Passports in the modification proceeding was an interim order extinguished by the Final Judgment and no longer effective; (2) determining that all provisions of the Agreed Final Decree of Divorce were in effect after the Final Judgment in the modification proceeding; (3) denying relief for intentional infliction of emotional distress; and (4) imposing sanctions based on a frivolous lawsuit. For the following reasons, we will affirm in part and reverse and render in part.

**Background**

Marriage and Divorce Decree

Barnes and Svetlana, who are originally from Russia, were married and have two children, Danny and Chip.[3] In 2015, the trial court in the divorce proceeding signed an Agreed Final Decree of Divorce, which addressed custody,

---

[2]The divorce and modification proceedings were determined by the 418th District Court in Montgomery County and assigned Cause Number 14-06-06397.

[3]To protect the minors' privacy, we will refer to them by pseudonyms. *See* Tex. R. App. P. 9.9(a)(3).

conservatorship, and possession and access, among other things. The Agreed Final Decree provided that Svetlana "shall have the right to maintain possession of any passports of the children, [Danny] and [Chip,]" and Svetlana must deliver the children's passports within ten days of receiving notice that Barnes intends to travel out of the country.

Suit to Modify Parent-Child Relationship

In April of 2018, Svetlana filed a Motion to Modify the parent-child relationship and alleged Barnes sexually abused Chip. She asked to be named sole managing conservator and that Barnes only be allowed supervised visitation. Barnes filed his Counterpetition to Modify Parent-Child Relationship requesting that he be named the joint managing conservator with the right to designate the children's primary residence. Barnes's Counterpetition also sought a determination of whether a risk of international abduction existed and requested the trial court "take such measures as are necessary to protect the children." During the modification proceedings, Barnes also filed an Emergency Motion for Delivery of Children's Passports supported by his affidavit. Based on the parties' agreement regarding the passports, the trial court signed the Order on Emergency Motion for Delivery of Children's Passports requiring Svetlana to surrender them to Crawley "to be held by him until further Order of this Court."

3

In early March 2019, a jury considered two issues in the modification trial: (1) whether Svetlana should be appointed sole managing conservator; and (2) whether Barnes should be appointed joint managing conservator with the right to designate the children's domicile. The jury answered "no" to both questions, so the parents' joint managing conservator status did not change.

Subsequently, on March 26, 2019, the trial court addressed issues of possession, access, attorneys' fees, and supervised visitation, but there was no discussion of passports. The trial court stated,

> The court is denying the request to modify possession and denying the request to award attorney's fees. Each party will be responsible for his or her own attorney's fees. The prior divorce decree provision for counseling . . . is extinguished. All other relief requested is denied. I will need an order prepared by the Petitioner.

Before the hearing concluded, Barnes's attorney asked the trial court, "Judge, with regards to the entry, does the possession order revert back to what it was as of today?" The trial court responded, "Correct. My ruling is effective today." The parties submitted a Final Judgment for the modification proceeding, which the trial court signed on March 28, 2019, and included the following language:

> It is therefore ORDERED, ADJUDGED, and DECREED that the request to modify possession and the request for attorney are denied. It is further ORDERED, ADJUDGED, and DECREED that the divorce decree provision for counseling . . . is extinguished and all other relief that was requested by the parties is denied.

4

Svetlana Flees to Russia with Children

On March 26, 2019, after the trial court's ruling, Svetlana went to Crawley's office and requested the passports. Given the trial court's ruling earlier that day, Crawley returned them to Svetlana. The following day, Barnes learned the children were not in school, and he could not reach Svetlana. He later learned that she took the children to Russia, where she remains. Barnes sued Svetlana in Montgomery County District Court for false imprisonment, intentional infliction of emotional distress, and interference with child custody in Cause Number 19-04-05624 and obtained a default judgment against her that awarded actual and exemplary damages.

Barnes's Suit Against Crawley

After obtaining a judgment against Svetlana, Barnes sued Crawley in Cause Number 19-11-15451 in Montgomery County District Court for false imprisonment, intentional infliction of emotional distress, and interference with child custody.[4] The parties tried the case to the bench. During trial, Crawley testified that the order requiring him to hold the passports was "a temporary interlocutory order." He explained that to be final, the order needed to dispose of all issues in the underlying case, and that order only dealt with the passports, not the underlying modification issues. Crawley further testified that the interlocutory orders were no longer effective

---

[4]The trial court denied leave for Barnes to file a Second Amended Original Petition that eliminated the interference with child custody claim and attempted to add a claim for aiding or assisting with interference of a possessory right.

once the trial court rendered Final Judgment. He testified that during the modification trial, neither party offered any evidence about international abduction or the passports.

The original Agreed Final Decree of Divorce was admitted into evidence, which contained a provision requiring Svetlana to maintain possession of the passports. Crawley explained that he returned the passports to her on March 26, 2019, because the court "rendered the order" that morning the parties were to revert to the terms of the divorce decree except for what the trial court changed in its final order. He testified that after the court rendered judgment, he had no right to retain the passports, and when he returned them, he acted as Svetlana's attorney. He said he had no reason to believe that she would violate the court's orders. Crawley explained that the day after the court rendered judgment, the parties entered into a Rule 11 agreement that allowed Barnes to pick the children up at the therapist's office on March 28 and had no reason to believe that would not happen. Crawley testified that Barnes filed a grievance against him with the State Bar, which was dismissed. Crawley said that Barnes filed a motion for sanctions against him in the modification case, which that trial court denied.

The attorney who represented Barnes in the modification proceeding, William Harrison, testified in the suit against Crawley. Harrison explained they filed the emergency motion on the children's passports given serious concerns based on

6

Mother' s previous representations that she would leave the country with the children. He did not recall any language in the petition to modify about the passports. He agreed the counterpetition to modify did not address or request relief for the passports.

Harrison testified the jury denied Svetlana's request to be sole managing conservator and Barnes's request to be the joint managing conservator that chose domicile. Two weeks later, the trial court addressed possession, access and attorney's fees, and there was no mention of the passports at that hearing. Harrison testified Barnes contacted him the following day and expressed concern that Svetlana withdrew the kids from school and left. Harrison then tried to contact Crawley by phone and email. Harrison testified that although he began trying to reach Crawley about the passports on March 27, Crawley did not respond until March 29 that he had returned the passports to Svetlana. Harrison testified that he communicated with Crawley regarding the Final Judgment and rule 11, but Crawley did not respond about the passports.

Harrison agreed that in the original decree, Svetlana had the right to maintain the children's passports. According to Harrison, other than modifying the counseling requirement, the trial court denied all relief. Harrison agreed that nothing in the judge's modification ruling or final order signed in March changed anything with the passports. He confirmed he did not object to the trial court's order and did not

7

try to get the trial court to make a ruling on the passports. Harrison knew the temporary orders had been extinguished but could not recall if he advised Barnes of that.

Barnes also testified during trial. Barnes testified that Crawley failed to tell him he had returned the passports to Svetlana after the hearing, and that implied an "intent to hurt." Barnes said Crawley knew Svetlana was leaving the country and breaking the law. When asked what evidence Barnes had to support that Crawley knew, Barnes confirmed it was just his belief. Barnes testified that because the trial court did not order Crawley to return the passports, Barnes believed he lacked legal authority to do so. When asked how Crawley intentionally caused the children emotional distress, Barnes testified that Crawley was involved in the kidnapping as evidenced by returning the passports without a court order and failing to communicate this to Barnes, which in Barnes's mind constituted "malice."

Other evidence admitted at trial included emails between Crawley and Harrison regarding the passports, with Crawley advising that he had returned them following the trial court's rendition on March 26. Additional emails admitted at trial showed that Crawley's office worked with Harrison after returning the passports to coordinate pickup of the children at the therapist's office. The Agreed Final Decree of Divorce, Motion and Order on Emergency Passport, and the pleadings and Final

8

Judgment from the modification proceeding were also admitted at trial, as well as the transcript of the trial court's ruling in the modification case.

The trial court determined that Barnes should take nothing on his claims against Crawley, that his claims were frivolous as they lacked a basis in law or fact and ordered that he pay Crawley's attorney's fees as a sanction. The trial court issued Findings of Fact and Conclusions of Law. The trial court's factual findings included:

> 7. On Tuesday March 26, 2019, the 418th District Court rendered judgment on the Modification case, ordering that it was effective that same day. That judgment denied all relief to both parties, and, with the exception of removing the provision of the Divorce Decree which required counseling for David Barnes, the judgment reinstated and reconfirmed all other provisions of the Divorce Decree.
>
> 8. On Tuesday, March 26, 2019, in light of the judgment in the Modification Case and the provisions of the Divorce Decree requiring that Svetlana Barnes have possession of the Children's passports – and especially in the absence of any order changing the passport provision of the Divorce Decree – Svetlana Barnes asked C.L. Crawley, Jr. to return the Children's passports to her, which he did that same day.
>
> 9. On Tuesday, March 26, 2019, C.L. Crawley, Jr. also scheduled counseling appointments for his client with Ther[e]sa Burbank to occur later that same week.
> . . .
> 13. C.L. Crawley, Jr. had no knowledge of Svetlana Barnes' plans to take the Children out of the United States.
> . . .
> 16. C.L. Crawley, Jr. did not return the passports to Svetlana Barnes as a means to assist her in kidnaping the Children, and had no knowledge that she had any intention of kidnaping the Children.
>
> 17. C.L. Crawley, Jr.'s return of the passports to Svetlana Barnes was done as a part of his representation of Svetlana Barnes in the Modification Case.

9

18. C. L. Crawley, Jr. played no role in Svetlana Barnes' plans other than returning the Children's passports to her as required by the governing Court order in place at that time – that being the Divorce Decree.

Among other things, the trial court concluded that:

4. [Crawley's] interpretation of the 418th district Court's final ruling in the Modification Case as being a further order of the Court contemplated in the interim order was correct, and that final ruling had the effect of reinstating the Divorce Decree's provision regarding [Mother's] right to possession of the Children's passports.
. . .

f. As to returning the passports and not telling David Barnes that he had done so:
i. Neither of those actions constitute extremely outrageous behavior by [Crawley] as is required to prove an intentional infliction of emotional distress cause of action[.]

**Issues One and Two**

In his first issue, Barnes argues that the Order to Deliver Children's Passports in the Modification Proceeding was not an interlocutory order extinguished by the Final Judgment such that the order to hold them was no longer effective when Crawley returned the passports. In his second issue, Crawley contends the trial court erred when it determined all provisions of the Agreed Decree of Divorce were in effect after the Final Judgment in the modification proceeding. Since these issues are interrelated, we address them together.

We review a trial court's written conclusions of law de novo, and our review of the trial court's factual findings is limited to legal sufficiency. *See BMC Software*

*Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's legal conclusions drawn from the facts to determine their correctness. *See id.* If we determine a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *See id.*

When a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We first examine the record for evidence supporting the finding; if there is none, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We will sustain the challenge only if the contrary proposition is conclusively established. *See id.* When a party attacks the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We must consider and weigh all the evidence and will only set aside a verdict if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See id.*

It is well-settled that a temporary order is superseded by entry of a final order, rendering moot any complaint about the temporary order. *See In re A.K.*, 487 S.W.3d

11

679, 683 (Tex. App.—San Antonio 2016, no pet.); *Rafferty v. Finstad*, 903 S.W.3d 374, 378 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (concluding divorce decree superseded temporary orders, and after decree was entered, temporary orders ceased to be "valid, subsisting, orders"). *Black's Law Dictionary* defines "interlocutory order" as "[a]n order that relates to some intermediate matter in the case; any order other than a final order." *Black's Law Dictionary* 1271 (10th ed. 2014).

The trial court's order regarding the passports dealt solely with that issue. *See Interest of R.R.K.*, 590 S.W.3d 535, 543 (Tex. 2019) ("[I]nterim orders, while not final, are nonetheless enforceable."). It did not resolve all parties and all claims and was not a final judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (noting that a judgment that disposes of all parties and claims is final). Accordingly, once the trial court rendered its final judgment, the Order to Deliver Children's Passports was no longer effective. Barnes pleaded for a determination for the risk of international abduction in his counterpetition for modification, but the parties failed to adduce any evidence of this during the modification trial. Except for extinguishing the Agreed Decree of Divorce's counseling provision, the trial court ruled that "[a]ll other relief requested is denied." The trial court's denial of "all other relief requested" necessarily would have included the request for a determination on the risk of international abduction.

"A judgment is rendered when the trial court officially announces its decision—either in open court or by written memorandum filed with the clerk—on the matter submitted for adjudication." *Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex. App.—Fort Worth 2004, no pet.) (citing *S & A Rest. Corp. v. Leal,* 892 S.W.2d 855, 857 (Tex.1995)) (other citation omitted). Because the trial court indicated its intention that the ruling was "effective today" and resolved all parties and all claims, the trial court orally rendered judgment. *See id.*; *see also Lehmann*, 39 S.W.3d at 200 (discussing finality). Once the trial court orally rendered judgment, it was effective immediately, and signing and entry of judgment were only ministerial acts. *Witau*, 145 S.W.3d at 735. Harrison, Barnes's own attorney, testified that he knew the temporary orders were extinguished, which further supported the trial court's findings, as did Harrison's emails admitted as exhibits acknowledging the Agreed Decree of Divorce governed the parties upon denial of the modification.

Having reviewed the record, we conclude the trial court correctly determined the Order to Deliver Children's Passports was extinguished by the Final Judgment in the modification proceeding, and the Agreed Decree of Divorce including the passport provision was effective when Crawley returned the passports. We overrule issues one and two.

13

**Issue Three**

In his third issue, Barnes asks whether the trial court erred in denying him relief for intentional infliction of emotional distress. We interpret this as a complaint regarding the sufficiency of the evidence to support the trial court's take nothing judgment on his intentional infliction of emotional distress claim and apply the same standard of review outlined in issues one and two above. Crawley argues that no evidence supports any element of Barnes's claim other than his subjective belief, and the affirmative defense of attorney immunity barred Barnes's claim against Crawley.

To establish a claim for intentional infliction of emotional distress, Barnes was required to prove: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *See Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Crawley pleaded the affirmative defense of attorney immunity. Generally, attorneys are immune from suits brought by third parties that arise from their representation of a client. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 657–58 (Tex. 2020). This immunity from suit applies both in litigation and non-litigation contexts. *See Haynes and Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 67, 77, 79 (Tex. 2021) (holding attorney immunity applies outside

14

the litigation context and discussing cases that applied immunity in litigation context). Whether attorney immunity applies depends on "the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct." *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (citation omitted) (emphasis original). The Texas Supreme Court has explained that the "defense exists to promote 'loyal, faithful, and aggressive representation' by attorneys, which it achieves, essentially, by removing the fear of personal liability[,]" and confirmed that immunity applies when a non-client's claim is based on an attorney's conduct "within the *scope of his representation of his clients*[,]" as opposed to conduct that is "outside the scope of his representation of his client" or "*foreign to the duties of a lawyer*." *Id.* at 681, 682 (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481–82 (Tex. 2015)) (emphasis added). The Texas Supreme Court rejected attempts to carve out exceptions for criminal conduct during the course of litigation and for fraud and concluded that attorney immunity protected allegedly criminal conduct that "involved the provision of legal services[.]" *Bethel*, 595 S.W.3d at 657–58; *see also Haynes & Boone*, 631 S.W.3d at 77.

> Summarizing our jurisprudence, attorney immunity protects an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney *and* (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's

15

reliance on the attorney's conduct is not justifiable. Whether the defense applies depends on whether the claim is based on this "*kind*" of conduct, not on the nature of the conduct's alleged wrongfulness.

*Haynes & Boone*, 631 S.W.3d at 78 (internal citations omitted). "Immunity attaches only if the attorney is discharging 'lawyerly' duties to his or her client." *Taylor v. Tolbert*, No. 20-0727, 2022 WL 1434659, at *4 (Tex. May 6, 2022) (citing *Cantey Hanger*, 467 S.W.3d at 481). "Acquiring materials from a client pertaining to a matter in dispute and reviewing, copying, retaining custody of, analyzing, and producing those materials are paradigmatically 'the provision of 'legal' services involving the unique office, professional skill, training, and authority of an attorney.'" *Id.* at *6 (quoting *Haynes & Boone*, 631 S.W.3d at 78).

In determining whether attorney immunity applies, we look to the kind of conduct at issue. Svetlana retained Crawley to represent her in a modification proceeding seeking sole managing conservatorship of the children and defending her against Barnes's counterpetition for modification. Furthering that representation, Crawley filed pleadings and appeared in court on her behalf. During the modification proceedings, Barnes sought to have Svetlana surrender the children's passports, and the trial court ordered Crawley to hold them until "further order of the court."

Crawley obtained the passports from Svetlana while representing her and held them pursuant to a court order. Once the trial court rendered a Final Judgment reinstating the Agreed Decree which permitted Svetlana to maintain possession of

16

the passports, Crawley returned them. He testified that he did so in his capacity as her lawyer. Crawley obtained the passports from his client, held them pursuant to a court order, and returned them after rendition of Final Judgment. This is the "kind" of conduct encompassed in "'the provision of legal services involving the unique office, professional skill, training, and authority of an attorney[,]'" and the attorney immunity defense applies. *See Taylor*, 2022 WL 1434659, at *6; *Haynes & Boone*, 631 S.W.3d at 78. To the extent Barnes complains about Crawley's failure to communicate that he had returned the passports, Barnes has cited no legal authority that Crawley had a duty to do so. The carrying out of Crawley's lawyerly duties extended to Svetlana and included returning property she was entitled to maintain possession of under the Agreed Decree of Divorce. Because attorney immunity barred Barnes's intentional infliction of emotional distress claim against Crawley, the trial court properly determined Barnes should take nothing on this claim. We overrule issue three.

## Issue Four

In his fourth issue, Barnes argues the trial court erred in imposing sanctions for filing a frivolous lawsuit.[5] In this case, the trial court awarded sanctions pursuant to Rule of Civil Procedure 13. *See* Tex. R. Civ. P. 13. We review a trial court's award

---

[5]Liberally construing Barnes's brief, we take this as a legal sufficiency challenge to the trial court's sanctions award. *See* Tex. R. App. P. 38.9.

or denial of sanctions under Rule 13 for an abuse of discretion. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *see also Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). A trial court abuses its discretion if the ruling was arbitrary or unreasonable. *See Low*, 221 S.W.3d at 614. In determining whether a sanctions award constitutes an abuse of discretion, we examine the entire record, including findings of fact and conclusions of law, reviewing the conflicting evidence in the light most favorable to the trial court's ruling and drawing all reasonable inferences in favor of the trial court's judgment. *Lake Travis Indep. Sch. Dist. v. Lovelace*, 243 S.W.3d 244, 249 (Tex. App.—Austin 2007, no pet.).

Rule 13 permits sanctions against attorneys or parties who file groundless pleadings in bad faith or for the purpose of harassment. *See* Tex. R. Civ. P. 13. The party seeking sanctions under Rule 13 must demonstrate first that the opposing party's pleadings are groundless, and then the party must demonstrate that the groundless pleadings were either filed in bad faith or filed for the purpose of harassment. *See id.*; *see also Nath v. Texas Children's Hospital*, 446 S.W.3d 355, 362–63 (Tex. 2014). We generally presume parties file pleadings in good faith. *See id.; see also Low*, 221 S.W.3d at 614. The party moving for sanctions must overcome this presumption. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993). This means the movant must establish not only the frivolity of his opponent's claim but also the improper motives underlying the decision to file suit. *See Sullivan*

18

*v. Arguello Hope & Assocs., PLLC*, No. 03-18-00144-CV, 2018 WL 6424200, at *2 (Tex. App.—Austin Dec. 7, 2018, no pet.) (mem. op.).

In determining whether a claim was filed in bad faith or for the purpose of harassment, we look to the party's conduct at the time the relevant pleading was signed. *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App.—Texarkana, no pet.). We also examine the facts available to the litigant and circumstances existing when the pleading was signed. *See id.* Rule 13 governs the signing and filing of groundless pleadings in bad faith or for purposes of harassment, rather than pursuing an action later determined to be groundless after pleadings were filed. *Karagounis v. Prop. Co. of Am.*, 970 S.W.2d 761, 764 (Tex. App.—Amarillo 1998, pet. denied).

In January of 2020, Barnes filed his Amended Original Petition and pleaded causes of action for false imprisonment, intentional infliction of emotional distress, and interference with child custody.

Neither the sanctions order contained in the final judgment nor the findings of fact and conclusions of law included a finding that in addition to being groundless, the pleadings were filed in bad faith or for the purposes of harassment. Because Barnes failed to object to the form of the sanctions order, he has waived any objection to the absence of the bad faith or harassment finding. *See Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Robson v.*

19

*Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied). Therefore, we consider whether the record contains any evidence to support an implied finding that Barnes brought his claims in bad faith or for the purpose of harassment. *See Robson*, 267 S.W.3d at 407. A party acts in bad faith when discovery puts him on notice his understanding of the facts may be incorrect, and he fails to make a reasonable inquiry into the facts before filing a pleading. *Id.* Improper motive is a requisite element of bad faith. *Id.* Bad faith is not merely bad judgment or negligence, rather it is the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose. *Id.* "Harass" describes "actions that tend to annoy, alarm, and verbally abuse another person." *Elkins v. Stotts-Brown*, 103 S.W.2d 664, 668 (Tex. App.—Dallas 2003, no pet.) (citation omitted).

We will assume without deciding that all causes of action Barnes asserted in his Amended Original Petition were groundless and turn to whether any evidence existed to support an implied finding that Barnes made the claims in bad faith or for the purpose of harassment. While the trial court did not hold a separate hearing on the sanctions motion, it did hear evidence during trial regarding Barnes's mistaken belief that Crawley was not authorized to return the passports by law. Barnes testified that "I'm not here to harm Mr. Crawley, but I'm here to request justice and – in a wrong, a tort for me and my boys. They were hurt by his actions. And I – I just want justice for my boys." Crawley's attorney testified regarding attorney's fees

incurred in defending the suit. She also offered her opinion that Barnes's lawsuit against Crawley was meant to punish him for Mother taking the children to Russia, but such conclusory opinion testimony is not evidence of Barnes's motives or credibility. *See Brozynski v. Kerney*, No. 10-05-00300-CV, 2006 WL 2160841, at *5 (Tex. App.—Waco Aug. 2, 2006, pet. denied) (mem. op.) (noting that "such conclusory opinion testimony is not evidence of [Appellants'] motives or credibility" where opposing attorney testified pleadings were "groundless, filed in bad faith for purposes of harassment"). Crawley's petition alone was likewise insufficient to show bad faith. *See Gomer*, 419 S.W.3d at 478 (noting same).

Crawley's lawyer also seemed to imply that the State Bar's dismissal of Barnes's grievance against Crawley should have put Barnes on notice to inquire further; however, the trial court's judgment and the sanctions award was tied to Barnes's Amended Original Petition, which he filed before the State Bar dismissed Barnes's grievance against Crawley. Because we look at the circumstances and facts known to Barnes when he filed his Amended Original Petition, we do not take the State Bar's dismissal of his grievance after he filed the pleading as evidence he should have been on notice to conduct further inquiries. *See Robson*, 267 S.W.3d at 411 n.9 (discussing facts learned by plaintiff after filing petitions were not evidence of his motives at the time he filed the petitions).

21

On appeal, Crawley argues Barnes's statement that his reason for the continued litigation was to recover funds to go to Court in Russia to get the boys constituted evidence of an improper motive. Even if we considered this statement Barnes made in closing, it does not show the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose. *See id.* at 407. Neither does it show an intent to annoy, alarm, or verbally abuse Crawley. *See Kargagounis*, 970 S.W.2d at 764. Crawley also points to the trial judge's comment "[t]hat's not what lawsuits are for. They are not GoFundMe accounts." The judge's comments are likewise not evidence of Barnes's motives, nor is the fact that Barnes sued other parties evidence that he filed the suit against Crawley in bad faith or for the purpose of harassment. Barnes's mistaken belief that Crawley was not authorized to return the children's passports does not rise to the level of bad faith or harassment. *See Robson*, 267 S.W.3d at 407.

The attorney who represented Barnes in the modification proceeding testified that although he knew the temporary orders had been extinguished by the trial court's final judgment in the modification proceeding, he could not recall if he apprised Barnes of that fact. Nothing in the record indicated that Barnes had been put on notice of this when he filed his Amended Original Petition in this case and yet failed to make a reasonable inquiry. As the party moving for sanctions, Crawley had the burden of overcoming the presumption that Barnes filed his Amended Original

22

Petition in bad faith or for the purpose of harassment. *See Low*, 221 S.W.3d at 614. In the absence of evidence that Barnes filed the Amended Original Petition in bad faith or for the purpose of harassment as shown by the facts and circumstances that existed at the time of the filing, the trial court abused its discretion in awarding sanctions in this case. *See id.*; *21st Mortg. Corp. v. Hines*, No. 09-15-00354-CV, 2016 WL 7177697, at *4 (Tex. App.—Beaumont Dec. 8, 2016, pet. denied) (mem. op.) (concluding that because no evidence existed establishing that pleadings or motions filed in bad faith or for purposes of harassment, the trial court abused its discretion by awarding sanctions pursuant to Rule 13); *see also* Tex. R. Civ. P. 13. We sustain issue four.

## Conclusion

We conclude the evidence supported the trial court's findings of fact and conclusions of law, and the trial court properly rendered a take nothing judgment on Barnes's intentional infliction of emotional distress claim, which was barred by attorney immunity. However, because the trial court abused its discretion by sanctioning Barnes when no evidence supported an implied finding that he did so in bad faith or for the purpose of harassment, we reverse the portion of the trial court's judgment ordering Barnes to pay sanctions in the amount of Crawley's attorney's fees and render judgment that Crawley take nothing on his motion for sanctions. *See Christus Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 541 (Tex. 2016)

(concluding that rendition was appropriate given legally insufficient evidence to support monetary sanctions award after trial on the merits).

AFFIRMED IN PART, REVERSED AND RENDERED IN PART.

_____

W. SCOTT GOLEMON
Chief Justice

Submitted on April 26, 2022
Opinion Delivered June 9, 2022

Before Golemon, C.J., Horton and Johnson, JJ.